Filed 1/12/10 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2010 ND 7

In the Matter of the Application 

for Disciplinary Action Against 

Bonnie J. Askew, A Member of the 

Bar of the State of North Dakota

Disciplinary Board of the Supreme 

Court of the State of North Dakota, Petitioner

v.

Bonnie J. Askew, Respondent

No. 20090195

Application for Disciplinary Action.

SUSPENSION ORDERED.

Per Curiam.

Paul W. Jacobson, Disciplinary Counsel, 515½ East Broadway Avenue, Suite 102, P.O. Box 2297, Bismarck, N.D. 58502-2297, for petitioner.

Bonnie J. Askew (self-represented), P.O. Box 227, Fargo, N.D. 58107-0227; submitted on brief.

Disciplinary Board v. Askew

No. 20090195

Per Curiam.

[¶1] A hearing panel of the Disciplinary Board recommended attorney Bonnie J. Askew be suspended from the practice of law for sixty days and pay the costs of the disciplinary proceeding in the amount of $3,801.85 for violating N.D.R. Prof. Conduct 1.3 and 1.4.  Counsel for the Disciplinary Board urges this Court to accept the hearing panel’s recommendation.  Askew objects to the hearing panel’s findings, contending they are not supported by the evidence.  Concluding there is clear and convincing evidence Askew violated N.D.R. Prof. Conduct 1.3 and 1.4, we direct that Askew be suspended from the practice of law for sixty days and that she pay the costs of the disciplinary proceeding in the amount of $3,801.85.

I

[¶2] In November 2008, counsel for the Disciplinary Board filed a petition for discipline, asserting that Bonnie J. Askew—an attorney admitted and licensed to practice law in the courts of North Dakota since September 25, 1989—had violated N.D.R. Prof. Conduct 1.3, diligence, and 1.4, communication.  Askew answered the petition for discipline, denying the allegations it contained.  A hearing was held on May 5, 2009.  The hearing panel made its findings, conclusions, and recommendation on July 6, 2009.

[¶3] The hearing panel found that in July 2007, Askew was retained by Judy Vavrina to represent her in obtaining a divorce, and Vavrina paid Askew $850.  The panel found that Vavrina signed some documents Askew had prepared and that Askew’s legal assistant, her daughter Jessica Askew, obtained the signature of Vavrina’s husband on documents.  The panel found Vavrina assumed the matter had been completed, but in early 2008, she checked with the clerk of court and discovered the divorce had not been completed or filed with the court.  The hearing panel found Vavrina contacted Askew and her assistant, but Askew did not complete the representation for which she had been retained during 2008.  The hearing panel found Vavrina again discovered in early 2009 that Askew had not completed the divorce.  The panel found Askew eventually obtained a judgment of divorce for Vavrina in April 2009.

[¶4] The hearing panel found that during her representation of Vavrina, from July 2007 until April 2009, Askew did not reasonably act to secure a timely resolution of the divorce, but rather relied on her non-lawyer daughter to oversee and pursue the matter.  The panel also found Askew did not adequately communicate with her client to assure her understanding of the requirements for obtaining a divorce.

[¶5] The hearing panel found Askew has been admonished on four previous occasions—in November 2005 for violation of N.D.R. Prof. Conduct 3.4(c); in February 2004 for violation of N.D.R. Prof. Conduct 3.4(c) and N.D.R. Lawyer Discipl. 1.2(A)(8); in July 1997 for violation of N.D.R. Prof. Conduct 1.3 and 1.4; and in March 1997 for violation of N.D.R. Prof. Conduct 3.3 and 3.4 and N.D.R. Lawyer Discipl. 1.2(A)(3) and 1.2(A)(8).

[¶6] The hearing panel concluded Askew violated N.D.R. Prof. Conduct 1.3, diligence, and 1.4, communication.  The panel considered N.D. Stds. Imposing Lawyer Sanctions 4.43, which states reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.  The hearing panel also considered N.D. Stds. Imposing Lawyer Sanctions 8.3(b), which states reprimand is generally appropriate when a lawyer has received an admonition for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client.  Finally, the hearing panel considered an aggravating factor under N.D. Stds. Imposing Lawyer Sanctions 9.22(a), prior disciplinary offenses.  The panel recommended Askew be suspended from the practice of law for sixty days and pay the $3,801.85 cost of the disciplinary proceeding.

[¶7] The matter was submitted to this Court under N.D.R. Lawyer Discipline 3.1(F)(2).  Askew objected to the hearing panel’s report on July 29, 2009.

II

[¶8] This Court reviews disciplinary proceedings de novo on the record.  
Disciplinary Board v. Light
, 2009 ND 83, ¶ 6, 765 N.W.2d 536 (citations omitted).  Disciplinary counsel must prove each alleged violation by clear and convincing evidence, which means the trier of fact must be reasonably satisfied with the facts the evidence tends to prove and thus be led to a firm belief or conviction.  
Id.
  The evidence need not be undisputed to be clear and convincing.  
Id.
  We give due weight to the findings, conclusions, and recommendations of the Disciplinary Board, but we do not act as a mere rubber stamp for the Board.  
Id.
  To decide which sanction, if any, is appropriate, each disciplinary matter must be considered on its own facts.  
Id.

[¶9] Because the hearing panel has the opportunity to hear witnesses and observe their demeanor, we accord special deference to the panel’s findings on matters of conflicting evidence.  
Disciplinary Board v. Bullis
, 2006 ND 228, ¶ 12, 723 N.W.2d 667.  Similarly, we defer to the hearing panel’s findings on the credibility of a witness, because the hearing panel has the opportunity to observe the witness’s demeanor and hear the witness testify.  
Disciplinary Board v. Johnson
, 2007 ND 203, ¶ 22, 743 N.W.2d 117.

[¶10] Askew argues the hearing panel’s decision is not supported by the evidence.  She also argues the hearing panel incorrectly considered the period between the filing of the disciplinary complaint and the divorce judgment when it found a lack of diligence.

A

[¶11] In the summer of 2007, Judy Vavrina called Jessica Askew, Bonnie Askew’s legal assistant (and daughter), to inquire about Bonnie Askew helping her obtain a divorce.  Bonnie Askew testified she was closing her office space at the time and paring down her legal practice.  Jessica Askew testified she met with Vavrina on August 2, 2007, and took preliminary information.  The meeting took place in Jessica Askew’s home, where she keeps an office and takes phone calls relating to Bonnie Askew’s legal practice.  Vavrina testified she could not remember whether she paid Jessica Askew during the initial meeting, but she does remember discussing money.  Jessica Askew testified she drafted initial documents—a summons, complaint, marital termination agreement, findings, and a judgment—and scheduled an appointment for Vavrina to meet with Bonnie Askew.  Jessica Askew also testified that by mid-

August, Vavrina had paid $400 and signed a fee agreement.  She testified Vavrina would stop by her house occasionally and drop off more money.  Vavrina testified she agreed to pay $850, which she thought she paid before the end of July.

[¶12] Vavrina eventually met with Bonnie Askew at the Fryn’ Pan restaurant in Fargo.  Vavrina testified the meeting occurred in July.  Bonnie Askew testified the meeting occurred on August 19, 2007.  During the meeting, the two discussed the details of Vavrina’s divorce, including property, domestic violence, and Vavrina’s husband’s criminal history.  After the meeting with Bonnie Askew, Vavrina again met with Jessica Askew at her home.  Vavrina testified she could not remember when the second meeting with Jessica Askew took place, but Jessica Askew testified the second meeting occurred on August 30 or 31, 2007.  Jessica Askew testified Vavrina reviewed and signed a verification of the complaint and was given a final version of the marital termination agreement, as well as copies of all of the prepared documents.  Vavrina testified she met with Bonnie Askew again at the Fryn’ Pan restaurant about a month after their first meeting to finalize details.  Vavrina testified she gave Bonnie Askew her work telephone number and her good friend’s telephone number as contact information, and suggested any correspondence be sent by registered mail.  Vavrina was concerned her husband may have been deleting her home telephone messages and obstructing her mail.  After the second meeting with Bonnie Askew and the meetings with Jessica Askew, Vavrina believed her divorce had been completed.  She testified, “[I understood] she was going to file it.  And that was—you know, that was it.  Because I had paid her.  She said the divorce would be going through.  And she was going to file it.  And that’s all.”

[¶13] Jessica Askew testified that after Vavrina signed a verification of the complaint, copies of all of the documents were sent to Vavrina’s husband, Warren Vavrina.  Additionally, Jessica Askew testified she personally served the divorce documents on Warren Vavrina on October 3, 2007.  Jessica Askew testified she served the summons and complaint, and Warren Vavrina signed the marital termination agreement.  Jessica Askew testified she told Judy Vavrina the divorce documents needed to be signed by both Judy Vavrina and Warren Vavrina before a notary public.  She testified Judy Vavrina demanded Bonnie Askew notarize the marital termination agreement without witnessing Warren Vavrina’s signature and Bonnie Askew refused to do so.  Jessica Askew also testified she gave Bonnie Askew’s home telephone number to Judy Vavrina so that she could call Bonnie Askew and set an appointment to notarize Warren Vavrina’s signature.  Judy Vavrina testified there was no discussion in 2007 about needing a notary for any signatures on the documents.  The documents were neither notarized nor filed with the district court.

[¶14] Jessica Askew testified she attempted to contact Judy Vavrina during the fall of 2007.  She testified, “It never occurred to me that Judy thought she’d signed the [marital termination agreement] or that Warren’s signature had been notarized.  That is ridiculous.”  At the disciplinary hearing, Bonnie Askew introduced three letters, two of which were dated October 25, 2007, and one of which was dated December 19, 2007, that Jessica Askew testified were sent to Vavrina—the first sent in October, the second a copy of the first but sent in November, and the third sent in December.  The first and second letters state, “Dear Judy:  You must call and set an appointment.  Both you and Warren must sign the Marital Termination Agreement before a notary.  Warren’s signature has not been notarized and you have never signed.  Sincerely, Bonnie J. Askew.”  The third letter states, “Dear Judy:  PLEASE CALL AS SOON AS POSSIBLE.  Bonnie Askew.”  Vavrina testified she did not receive any of the three letters.  Jessica Askew testified that in addition to the letters, she attempted to call Vavrina at least five times during the fall of 2007, with no response.

[¶15] Vavrina testified that in March 2008, she went to the courthouse to retrieve a copy of her divorce papers in order to file her income tax return and discovered she was not divorced, so she called Jessica Askew.  Vavrina and Bonnie Askew met in May 2008, at the Fryn’ Pan restaurant.  Jessica Askew testified she updated the signature date on the marital termination agreement and gave Vavrina a copy.  Vavrina testified she went to Jessica Askew’s home office and signed papers in August 2008.  Vavrina testified Jessica Askew told her “it had been [sic] to be notarized and then it would be ready to go.”  Again, Vavrina believed her divorce was final.  Jessica Askew testified the divorce was filed in October or November of 2008.  She testified she attempted to communicate with Vavrina by telephone during the fall of 2008, but had difficulty doing so.  She testified Vavrina needed to sign a verification of proof before a notary in order to proceed with a default divorce, but she could not reach Vavrina by phone.  Jessica Askew testified no letters were sent to Vavrina in 2008.  She testified she mailed Vavrina a letter from Bonnie Askew on February 26, 2009, stating in part, “It is necessary for you to sign an affidavit of proof to proceed by default.  This must be signed before a notary public.  If you wish to proceed by stipulation i[t] will be necessary for both you and your husband to sign the agreement before a notary public.”  Vavrina testified she did not receive the letter.

[¶16] Vavrina testified she again went to the courthouse in March 2009 to retrieve a copy of her divorce papers in order to file her income tax return and was informed she was not divorced.  She testified she called Jessica Askew, who set up an appointment for her to meet with Bonnie Askew and “sign[] more papers.”  Jessica Askew testified Vavrina called her after receiving the February 26, 2009, letter.  Jessica Askew testified Vavrina did not want to meet with Bonnie Askew, so Jessica Askew sent a letter from Bonnie Askew, dated March 3, 2009, again explaining why it was necessary for Vavrina to meet with Bonnie Askew.  Vavrina testified she did not receive the letter.  In early March 2009, Vavrina met with Bonnie Askew at the Fryn’ Pan restaurant and signed the verification of proof.  Jessica Askew testified that after the meeting, she sent Vavrina a letter from Bonnie Askew, dated March 11, 2009, asking for Warren Vavrina’s social security number.  Jessica Askew testified Vavrina called on March 16, 2009, with the Social Security number.  The hearing panel found Bonnie Askew obtained a judgment of divorce for Vavrina in April 2009.  On April 21, 2009, Bonnie Askew sent Vavrina a letter telling Vavrina she was divorced, with copies of the divorce judgment and decree enclosed.  Vavrina testified she received the final letter.

[¶17] The hearing panel concluded Bonnie Askew violated N.D.R. Prof. Conduct 1.3, which requires a lawyer to act with reasonable diligence and promptness in representing a client.  The hearing panel also concluded Bonnie Askew violated N.D.R. Prof. Conduct 1.4, which requires a lawyer to make reasonable efforts to keep a client reasonably informed about the status of a matter, to promptly comply with a client’s reasonable requests for information, and to explain a matter to the extent reasonably necessary to permit a client to make informed decisions regarding the representation.

B

[¶18] Askew objects to the hearing panel’s findings, claiming they are not supported by the evidence.  She contends her representation began on August 13, 2007, when she and Vavrina signed a retainer agreement and Vavrina paid $400.  Askew contends Vavrina paid $700 total for the divorce.  Askew contends Vavrina did not sign “some” documents in August 2007, but signed only a verification of the complaint at that time.  Askew claims she gave Vavrina no reason to believe she was divorced and she wrote three letters to Vavrina in the fall of 2007 explaining she was not divorced.  She contends Vavrina was an uncooperative client and difficult to contact, and she assumed Vavrina had changed her mind about proceeding with the divorce.  She also testified, however, Vavrina did not at any point tell her she did not want to proceed with the divorce.  Askew contends Vavrina did not give her permission to move forward with a default action for divorce until September 2008, after filing the disciplinary complaint.  She contends that prior to that time, Vavrina had insisted the divorce move forward as a stipulated agreement.  Vavrina, however, testified she believed the divorce “would be going through,” and she did not discover until March of 2008, and then again in March of 2009, that she was not in fact divorced.

[¶19] On matters of conflicting evidence, we accord special deference to the hearing panel’s findings, because the hearing panel has the opportunity to hear witnesses and observe their demeanor.  
Disciplinary Board v. Bullis
, 2006 ND 228, ¶ 12, 723 N.W.2d 667.  Here, the hearing panel apparently found Vavrina’s testimony to be credible.  Vavrina testified she secured Askew’s representation in July 2007 and paid $850 before the end of that month.  She testified she believed the divorce had been completed in the summer of 2007.  Vavrina testified Askew “said the divorce would be going through.  And she was going to file it.”  Vavrina testified she received no letters or other communication from Bonnie Askew until the final letter in April 2009 telling her she was divorced.  She testified that after signing the papers in 2008, she again believed the divorce action would be filed immediately.  She testified that while she was concerned her husband was intercepting her phone calls and mail, she had given Askew a friend’s phone number at which to reach her and had suggested letters be sent via registered mail.

[¶20] While more detailed findings from the hearing panel would have been preferred, it is clear from the hearing panel’s findings it accepted Vavrina’s testimony over Bonnie Askew’s testimony and Jessica Askew’s testimony.  The evidence need not be undisputed to be clear and convincing.  
Disciplinary Board v. Light
, 2009 ND 83, ¶ 6, 765 N.W.2d 536.  Furthermore, Bonnie Askew testified she did not talk to Vavrina on the telephone at any time from July 2007 to April 2009.  She met with Vavrina in person four times, three of which were at the Fryn’ Pan restaurant.  Jessica Askew testified no letters were sent to Vavrina during the entire year of 2008.  On the basis of the record, and deferring to the hearing panel’s findings on credibility, we conclude there is clear and convincing evidence Askew did not act with reasonable diligence and promptness in representing Vavrina, as required by N.D.R. Prof. Conduct 1.3.  Additionally, there is clear and convincing evidence Askew did not make reasonable efforts to keep Vavrina reasonably informed about the status of the divorce and she did not explain the matter to the extent reasonably necessary to permit Vavrina to make informed decisions regarding the representation, as required by N.D.R. Prof. Conduct 1.4.

C

[¶21] Askew also argues the hearing panel incorrectly considered the period between the filing of the disciplinary complaint and the divorce judgment.  Askew contends it was not unreasonable for her to suspend activity on the divorce matter during the initial disciplinary proceedings.  Comment 4 to N.D.R. Prof. Conduct 1.3 states, however, that unless the lawyer-client relationship is terminated as provided in Rule 1.16, a lawyer should carry through to conclusion all matters undertaken for a client.  Furthermore, the Comment states any doubt about whether a client-lawyer relationship still exists should be clarified by the lawyer, preferably in writing, so the client will not mistakenly suppose the lawyer is looking after the client’s affairs when the lawyer has ceased to do so.

D

[¶22] Finally, Askew argues the hearing panel’s recommended sanction is out of proportion to the facts of the case.  She contends the matter is not of a similar nature to the more recent admonitions she has received.  Under N.D. Stds. Imposing Lawyer Sanctions 8.3(b), reprimand is appropriate when a lawyer has received an admonition for the same or similar misconduct and engages in further similar acts of misconduct that cause injury to a client.  Of Askew’s four prior admonitions, three were not of a similar nature to the current disciplinary action.  In July 1997, however, Askew was admonished for violations of N.D.R. Prof. Conduct 1.3 and 1.4, concerning diligence and communication.  Additionally, N.D. Stds. Imposing Lawyer Sanctions 9.22(a) provides prior disciplinary offenses are an aggravating factor to consider when imposing discipline.  Admonitions are a form of non-public discipline.  
Disciplinary Board v. McKechnie
, 2003 ND 22, ¶ 9, 656 N.W.2d 661.  While details of prior private discipline should not be alleged in a petition for public discipline, a prior disciplinary history is relevant in assessing sanctions after allegations have been proven by clear and convincing evidence.  
Id.
 at ¶ 10.  Thus, it was appropriate for the hearing panel to consider Askew’s four prior admonitions when imposing discipline.

III

[¶23] On the basis of the record, we accept the hearing panel’s findings that Askew clearly and convincingly violated N.D.R. Prof. Conduct 1.3, diligence, and N.D.R. Prof. Conduct 1.4, communication.  We order that Askew be suspended from the practice of law for sixty days, effective March 1, 2010, and that she pay the costs of the disciplinary proceeding of $3,801.85.

[¶24] Gerald W. VandeWalle, C.J.

Dale V. Sandstrom

Daniel J. Crothers

Mary Muehlen Maring

Carol Ronning Kapsner