2012 ND 118

In the Matter of the Application for DISCIPLINARY ACTION AGAINST Edwin W.F. DYER, a Member of the Bar of the State of North Dakota.

Disciplinary Board of the Supreme
Court of the State of North
Dakota, Petitioner

v.

Edwin W.F. Dyer, III, Respondent.

Disciplinary Board of the Supreme
Court of the State of North
Dakota, Petitioner

v.

Anne E. Summers, Respondent.

Nos. 20120020, 20120021,
20120022, 20120023.

Supreme Court of North Dakota.

June 7, 2012.

Paul W. Jacobson, Disciplinary Counsel, Bismarck, N.D., for petitioner.

Michael Ray Hoffman, Bismarck, N.D., for respondent Edwin W.F. Dyer, III.

Gregory Ian Runge, Bismarck, N.D. for respondent Anne E. Summers.

PER CURIAM.

[¶ 1] Disciplinary Counsel and attorneys Edwin W.F. Dyer III and Anne E. Summers objected to a report of a hearing panel of the Disciplinary Board, recommending Dyer and Summers be suspended from the practice of law for violating N.D.R. Prof. Conduct 8.1(b) and each pay half of the costs of the disciplinary proceeding. We conclude there is clear and convincing evidence Dyer and Summers violated N.D.R. Prof. Conduct 1.15(c) and 8.1(b). We order Dyer and Summers be suspended from the practice of law for nine months and each pay half of the costs and expenses of the disciplinary proceeding.

I

[¶ 2] Dyer and Summers practice law together in Bismarck. Dyer has been licensed to practice law in North Dakota since 1980 and Summers has been licensed in North Dakota since 1982. On July 24, 2009, Disciplinary Counsel petitioned for

discipline against Dyer and Summers, alleging they violated N.D.R. Prof. Conduct 1.15(c) by removing money from a client trust account for their own use before fees were earned and expenses were incurred and violated N.D.R. Prof. Conduct 8.1(b) by failing to supply requested records from the trust account to the inquiry committee as part of the disciplinary investigation.

[¶ 3] After the petitions were filed, Disciplinary Counsel requested Dyer and Summers produce records relating to their trust account for the period of September 2005 through March 2008, including monthly bank account statements, individual trust account statements for each client, records of attorney time and expenses for each client who had money deposited in the trust account, and bills forwarded to the clients. Dyer and Summers refused to provide the requested documents, arguing the information was confidential and disclosure would violate N.D.R. Prof. Conduct 1.6.

[¶ 4] Disciplinary Counsel moved to compel discovery. In November 2009, the hearing panel granted Disciplinary Counsel's motion and entered an order to compel, ruling attorney-client privilege does not bar the production of the requested records and a confidentiality order would protect the confidentiality of the records. The hearing panel ordered Dyer and Summers to produce monthly trust account bank statements, individual trust account records for each client who gave the attorneys money that was deposited in the trust account, and bills forwarded to the trust account clients. The hearing panel also ordered that information about the type of work performed could be redacted from the clients' bills and that Disciplinary Counsel keep the documents confidential.

[¶ 5] On December 14, 2009, Dyer and Summers sought a supervisory writ from this Court to vacate the hearing panel's order. In January 2010, we denied the writ. Dyer and Summers continued to refuse to comply with the order to compel. On March 17, 2010, the disciplinary petitions were amended to include allegations about Dyer and Summers' failure to comply with the order to compel.

[¶ 6] On September 15, 2011, a hearing was held before the hearing panel and Disciplinary Counsel presented evidence from three of Dyer and Summers' clients and bank records from the trust account. Dyer and Summers did not testify or offer any witnesses or exhibits.

[¶ 7] On January 12, 2012, the hearing panel entered its findings of fact, conclusions of law, and recommendations. The hearing panel concluded Disciplinary Counsel did not prove Dyer and Summers violated Rule 1.15(c) by clear and convincing evidence, and dismissed the alleged violations without prejudice finding the counsel's failure to produce evidence was likely attributable to Dyer and Summers' refusal to produce the individual client trust account records. The panel found Dyer and Summers had no valid basis for refusing to produce the trust account records, the information was not protected by Rules 1.6 or 1.15, and they violated Rule 8.1(b) by knowingly failing to respond to a lawful demand for information from a disciplinary authority. The panel recommended both attorneys "be suspended from the practice of law for nine (9) months and pay half the costs of the disciplinary proceeding in the amount of $3,957.26, with the potential of six (6) months or less to be suspended if reinstatement is ordered." The panel also recommended that after two months of suspension, Dyer and Summers may apply for reinstatement but must comply with certain conditions before being allowed to return to the practice of law, including pay-

ing the ordered costs, producing the trust account records within 30 days of the order of suspension, providing evidence demonstrating a plan for compliance with Rule 1.15, and refraining from further disciplinary complaints regarding the trust accounts.

## II

[¶ 8] We review disciplinary proceedings de novo on the record. *In re Disciplinary Action against Kirschner*, 2011 ND 8, ¶ 9, 793 N.W.2d 196. " 'Disciplinary counsel must prove each alleged violation by clear and convincing evidence, which means the trier of fact must be reasonably satisfied with the facts the evidence tends to prove and thus be led to a firm belief or conviction.' " *Id.* (quoting *Disciplinary Bd. v. Askew*, 2010 ND 7, ¶ 8, 776 N.W.2d 816). We give the Disciplinary Board's findings, conclusions, and recommendations due weight, but we do not act as a mere rubber stamp. *Kirschner*, at ¶ 9. We consider each disciplinary matter on its own facts to decide which sanction, if any, is appropriate. *Id.*

## III

[¶ 9] Disciplinary Counsel argues the hearing panel erred in concluding there was insufficient evidence Dyer and Summers violated N.D.R. Prof. Conduct 1.15(c). He claims there was evidence Dyer and Summers removed money clients had paid in advance from the client trust account for their own use before fees were earned or expenses were incurred on behalf of their clients.

[¶ 10] Rule 1.15, N.D.R. Prof. Conduct, provides that a client's property shall be appropriately safeguarded and the lawyer must deposit the client's funds in a client trust account and keep them separate from the lawyer's own property. Under N.D.R. Prof. Conduct 1.15(c), "A lawyer shall de-

posit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred."

[¶ 11] Evidence presented at the disciplinary hearing included testimony from three of Dyer and Summers' clients, records for the trust account from the bank, and copies of invoices sent to the clients showing the amounts the clients paid and when the work was completed. Although the hearing panel found the trust account had a negative balance on multiple occasions and the records showed a pattern of transferring funds from the trust account to the business account in increments of $500 or $1,000 indicating Dyer and Summers were not complying with the rule, the hearing panel ultimately found Disciplinary Counsel failed to prove Dyer and Summers violated N.D.R. Prof. Conduct 1.15(c). After reviewing the record, however, we conclude there was clear and convincing evidence Dyer and Summers withdrew funds from the client trust account before the fees were earned or expenses were incurred, which violated N.D.R. Prof. Conduct 1.15(c).

[¶ 12] Scot Decker testified and presented evidence he paid Dyer and Summers a $4,000 retainer on June 19, 2007. A copy of the trust account's July 31, 2007, bank statement shows the account had a balance of negative $357.04 on July 10, 2007. There was evidence Decker received an invoice from Dyer and Summers dated February 8, 2008, showing $1,503.75 worth of work had been completed on Decker's case before July 10, 2007. Based on this evidence, the client trust account should have had a balance of at least $2,496.25 on July 10, 2007, for the portion of Decker's funds that had not been earned.

[¶ 13] Ruben Voigt, one of Dyer and Summers' clients, testified and presented

evidence he paid a $5,000 retainer on November 9, 2007. There was evidence he received an invoice dated August 26, 2008, showing the work completed on his case totaled $2,770.21 up to that date and the balance of his trust account on that date was $2,229.79. A copy of the February 29, 2008, bank statement for the trust account was admitted and showed the trust account had a balance of $98.83 on February 7, 2008. Voigt paid a $5,000 retainer prior to February 7, 2008, and the August 26, 2008, invoice showed the balance of Voigt's funds in the trust account at that time was $2,229.79. The trust account should have had a balance of at least $2,229.79 on February 7, 2008, for the portion of Voigt's funds that had not been earned.

[¶ 14] Shane Krueger testified and presented evidence he paid Dyer and Summers a $2,000 retainer on October 16, 2007. There was evidence Krueger received an invoice from Dyer and Summers dated December 1, 2008, showing the work completed on his case at that time. There was evidence from the February 2008 bank statement that the trust account had a balance of $98.83 on February 7, 2008, and Krueger's invoice showed $1,529.50 in work had been completed on his case at that point. There was evidence the trust account should have contained at least $470.50 on February 7, 2008, for the unearned portion of Krueger's funds.

[¶ 15] Evidence that the balance of a trust account fell below the total amount held in trust supports a prima facie finding Rule 1.15 was violated. *See Attorney Grievance Comm'n of Maryland v. Zdravkovich*, 381 Md. 680, 852 A.2d 82, 91 (2004). Dyer and Summers did not present any evidence or explain why the trust account balance dropped below the total amounts that were held in trust. On the basis of this record, there is clear and convincing evidence Dyer and Summers

withdrew fees before they were earned or expenses were incurred. We conclude Dyer and Summers violated N.D.R. Prof. Conduct 1.15(c).

## IV

[¶ 16] Dyer and Summers argue the hearing panel erred in finding they violated N.D.R. Prof. Conduct 8.1(b) by knowingly failing to respond to a lawful demand for information from both the inquiry committee and the hearing panel. They contend the requested information was protected and they were prohibited from disclosing the information under N.D.R. Prof. Conduct 1.6.

[¶ 17] Rule 8.1, N.D.R. Prof. Conduct, provides requirements for bar admission and disciplinary matters, and states:

> An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
>
> . . .
>
> (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

Rule 1.6, N.D.R. Prof. Conduct, requires lawyers to keep information related to the representation of a client confidential, and states:

> (a) A lawyer shall not reveal information relating to the representation of the client unless the client consents, the disclosure is impliedly authorized in order to carry out the representation, or the disclosure is required by paragraph (b) or permitted by paragraph (c). The duty of confidentiality continues after

the lawyer-client relationship has terminated.

. . .

(c) A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary:

. . .

    (4) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client; or

    (5) to comply with other law or a court order.

[¶ 18] The inquiry committee requested Dyer and Summers provide the records from the trust account, including monthly bank statements for the account, individual trust account statements for each client, and bills forwarded to the clients. The hearing panel ordered Dyer and Summers produce monthly trust account bank statements for September 2005 through March 2008, individual client trust account records for September 2005 through March 2008, and bills forwarded to trust account clients with the description of the work performed redacted for September 2005 through March 2008.

[¶ 19] Rule 1.6 is broad and prohibits a lawyer from revealing information relating to the representation of a client. However, a lawyer may not respond to a request for information from a disciplinary authority with a blanket refusal; rather, the lawyer must consider whether each item requested is information protected by the rule. *See* North Dakota Ethics Op. 06–02 (2006) (Rule 1.6 cannot be used to deny any and all disclosures; rather, the lawyer must consider each item requested). In this case, most of the information the inquiry committee and hearing panel requested was protected by Rule 1.6, but the monthly bank statements, copies of which Disciplinary Counsel was able to secure from the bank, do not include information about specific clients. Other courts have held similar records are not subject to the requirements of Rule 1.6. *See Zdravkovich*, 852 A.2d at 95 (bank statements or escrow account bank records are not subject to the confidentiality requirements of Rule 1.6 or to the attorney-client privilege). Our rules also indicate information from banks about a trust account is subject to disclosure and is not confidential information protected by Rule 1.6. *See* N.D.R. Prof. Conduct 1.15(1) (financial institutions are required to report certain information about trust accounts to the Disciplinary Board). Dyer and Summers were required to consider each item requested to determine whether it was protected under Rule 1.6. The monthly trust account statements from the bank were not protected under Rule 1.6 and should have been disclosed to the inquiry committee and the hearing panel.

[¶ 20] Most of the requested information is protected under Rule 1.6, and Dyer and Summers contend none of the rule's exceptions apply and they would violate the rule if they disclosed this information. Rule 1.6(c) provides for exceptions to the rule and allows a lawyer to disclose information related to the representation of a client under certain circumstances. Most of the exceptions in Rule 1.6(c) do not apply under the circumstances of this case. However, Rule 1.6(c)(4) states that a lawyer may reveal information to respond to allegations in any proceeding concerning the lawyer's representation of the

client. Dyer and Summers claim this exception only applies in cases or controversies between an attorney and his or her client, and therefore it does not apply in this case because none of their clients filed a disciplinary complaint. Under the plain language of the rule, however, we conclude the exception is not limited to controversies between the lawyer and his or her client.

[¶ 21] The North Dakota Rules of Professional Conduct are partially based on the Model Rules of Professional Conduct developed by the American Bar Association. *See Nesvig v. Nesvig*, 2004 ND 37, ¶ 22, 676 N.W.2d 73. The Model Rules contain a provision corresponding to N.D.R. Prof. Conduct 1.6(c)(4). *See* Annotated Model Rules of Prof'l Conduct, R. 1.6(b)(5) (7th ed.2011). Other states have also adopted the Model Rules, and we may find other authorities' interpretations of the Model Rule or its state counterpart persuasive. *Cf. State v. Hayes*, 2012 ND 9, ¶ 24, 809 N.W.2d 309 (we find federal interpretations of a procedural rule persuasive when the state rule is adapted from its federal counterpart). Other authorities have interpreted this exception to Rule 1.6 in a similar manner and have held a lawyer is permitted to disclose information related to the representation of a client in any proceeding concerning the lawyer's representation of the client, including proceedings where the controversy is not between the attorney and his or her client. *See People v. Robnett*, 859 P.2d 872, 879 (Colo.1993) (the self-defense exception to Rule 1.6 is not restricted to proceedings initiated by allegations from the client); *Burkhart v. Semitool, Inc.*, 2000 MT 201, ¶ 48, 300 Mont. 480, 5 P.3d 1031 (the provision of Rule 1.6 permitting a lawyer to disclose information in any proceeding concerning the lawyer's representation of a client is not restricted to controversies between a lawyer and client);

Annotated Model Rules of Prof'l Conduct, R. 1.6 annot. at p. 110 (7th ed.2011) (rule permits disclosure to defend claims brought by third parties as well as clients, which may arise in civil, criminal, disciplinary, or other proceedings); Geoffrey C. Hazard, Jr. et al., *The Law of Lawyering* § 9.25, 9–109 (3d ed.2012) (the last clause of this provision concerns disciplinary or other proceedings brought against a lawyer on account of his representation of a client and applies when a third party challenges the lawyer's representation); *see also* Oregon Ethics Op.2005–104 (2005) (under Rule 1.6, lawyer may reveal information related to representation when an opposing party files complaint with the bar); South Carolina Ethics Advis. Op. 94–23 (under Rule 1.6 lawyer may reveal information related to representation of client when under investigation by Social Security Administration for possible misconduct in connection with his client who was a Social Security disability claimant). We conclude a lawyer is permitted to disclose information relating to the representation of a client in any proceeding concerning the lawyer's representation of the client under Rule 1.6(c)(4).

[¶ 22] To the extent Dyer and Summers argue there must be a controversy between the lawyer and a particular client and the client must complain to the Disciplinary Board about the mishandling of his or her funds for the exception to apply, the argument is without merit. Rule 3.1(a), N.D.R. Lawyer Discipl., authorizes the disciplinary board or the inquiry committee to "consider on their own motions alleged grounds for disciplinary action or disability proceedings." The inquiry committee has the authority to consider disciplinary action and investigate possible disciplinary violations without receiving a complaint from a named client. Rule 1.6(c)(4) permits an attorney to disclose information

related to the representation of a client in any proceeding concerning the lawyer's representation of the client, which includes proceedings initiated by the disciplinary board or inquiry committee.

■ [¶ 23] Although Dyer and Summers were permitted to disclose information under Rule 1.6(c)(4), they were only permitted to reveal information relating to the representation of a client to the extent they reasonably believed was necessary to respond to the allegations. *See* N.D.R. Prof. Conduct 1.6(c). Official comment 14 to Rule 1.6 provides:

> [P]aragraph (c) permits disclosure only to the extent the lawyer reasonably believes the disclosure is necessary to accomplish one of the purposes specified. Where practicable, the lawyer should first seek to persuade the client to take suitable action to obviate the need for disclosure. In any case, a disclosure adverse to the client's interest should be no greater than the lawyer reasonably believes necessary to accomplish the purpose. If the disclosure will be made in connection with a judicial proceeding, the disclosure should be made in a manner that limits access to the information to the tribunal or other persons having a need to know it and appropriate protective orders or other arrangements should be sought by the lawyer to the fullest extent practicable.

A lawyer should attempt to protect the confidential information and limit the disclosure if possible. *See In re Harwell*, 439 B.R. 455, 460 (Bankr.W.D.Mich.2010) (the exceptions of Rule 1.6 do not authorize wholesale disclosure, law firm unnecessarily filed unredacted exhibits in proceedings reviewing fees); *Burkhart*, 2000 MT 201, ¶ 54, 300 Mont. 480, 5 P.3d 1031 (the court and parties may use equitable measures to permit the attorney to make his or her case while protecting confidential informa-

tion from disclosure, including the use of sealing and protective orders, limited admissibility of evidence, orders restricting the use of testimony in successive proceedings, and in camera proceedings when appropriate); *Spratley v. State Farm Mut. Auto. Ins. Co.*, 2003 UT 39, ¶¶ 21–22, 78 P.3d 603 (attorneys have a duty to minimize disclosures and the trial court should use the tools inherent in its authority to govern the conduct of the proceedings to safeguard against overbroad disclosure).

■ [¶ 24] Once Dyer and Summers objected to the inquiry committee's request and attempted to limit the disclosure, they were permitted to disclose the requested information under Rule 1.6(c)(4). The official comment to Rule 1.6 further provides, "A lawyer's decision not to disclose as permitted by paragraph (c) does not violate this Rule. Disclosure may be required, however, by other rules. Some rules require disclosure only if such disclosure would be permitted by paragraph (c). See Rules 8.1 and 8.3." We conclude Dyer and Summers were permitted to disclose the requested information to both the inquiry committee and the hearing panel under Rule 1.6(c)(4). Because Dyer and Summers were permitted to disclose the information the inquiry committee and hearing panel requested under Rule 1.6, the disclosure was required under Rule 8.1.

■ [¶ 25] Moreover, Dyer and Summers were permitted to disclose the requested information after the hearing panel entered its order to compel under Rule 1.6(c)(5). Rule 1.6(c)(5) permits a lawyer to reveal information relating to the representation of a client to the extent the lawyer reasonably believes is necessary "to comply with other law or a court order." Under N.D.R. Lawyer Discipl. 3.3(c), the hearing panel has authority and must decide disputes about the scope and other

aspects of discovery. The hearing panel's discovery orders are interlocutory and may not be appealed before entry of the final order. *Id.* A hearing panel has authority to order a lawyer to comply with discovery under N.D.R. Lawyer Discipl. 3.3(c), and therefore the panel's discovery order qualifies as "other law or a court order." *Cf. United States v. Legal Servs. for New York City,* 249 F.3d 1077, 1082–83 (D.C.Cir.2001) (complying with subpoena from Inspector General of Legal Services Corporation did not interfere with attorney's obligation under Rule 1.6 based on a statute giving the inspector general authority to subpoena certain trust fund documents); *State ex rel. Oklahoma Bar Ass'n v. Gasaway,* 863 P.2d 1189, 1201 (Okla.1993) (when the Professional Responsibility Commission is acting in an investigation related to a trust account, the lawyer may not resist a subpoena from the Commission to examine trust account records solely on the ground that the record may reveal information concerning the lawyer's clients); D.C. Ethics Op. 288 (1999) (under the Rule 1.6 "required by law" exception, a lawyer may comply with a subpoena from a congressional subcommittee after seeking to quash or limit the subpoena on all available, legitimate grounds).

[¶ 26] In this case, the hearing panel granted Disciplinary Counsel's motion to compel but also limited the discovery request to help preserve client confidentiality. The hearing panel's order on the motion to compel was "law" that required Dyer and Summers to disclose the requested information, and Dyer and Summers were permitted to disclose the requested information under Rule 1.6(c)(5). Although Rule 1.6(c)(5) states a lawyer may reveal information relating to the representation of a client to comply with other law or court order, the lawyer does not have discretion in deciding whether to disclose the information because disclosure is required under other law. *See Adams v. Franklin,* 924 A.2d 993, 997 (D.C.2007). The hearing panel has authority to order the parties to disclose information for discovery in disciplinary proceedings, the hearing panel's order is law, and the parties are required to comply with the discovery orders.

[¶ 27] Rule 1.6(c)(5) permits a lawyer to comply with any law or court order requiring disclosure, but the lawyer should also assert all nonfrivolous claims to protect confidential information. Official comment 13 to Rule 1.6 provides:

A lawyer may be ordered to reveal information relating to the representation of a client by a court or by another tribunal or governmental entity claiming authority pursuant to other law to compel the disclosure. Absent the client's written consent to do otherwise, the lawyer should assert on behalf of the client all nonfrivolous claims that the order is not authorized by other law or that the information sought is protected against disclosure by the attorney-client privilege or other applicable law. In the event of an adverse ruling, the lawyer must consult with the client about the possibility of appeal to the extent required by Rule 1.4. Unless review is sought, however, paragraph (c)(5) permits the lawyer to comply with the court's order.

*See also Adams,* 924 A.2d at 998 (a lawyer shall not comply with an order requiring disclosure until the lawyer has made every reasonable effort to appeal the order or has notified the client of the order and given the client an opportunity to challenge it).

▮ [¶ 28] In this case, Dyer and Summers resisted Disciplinary Counsel's motion to compel and later sought a super-

visory writ from this Court to vacate the hearing panel's discovery order. A lawyer "should not be penalized for properly seeking further information or challenging a request for information before complying with it." Annotated Model Rules of Prof'l Conduct, R. 8.1 annot. at p.584 (7th ed. 2011). Dyer and Summers' decision to seek a writ was appropriate; however, they were required to comply with the hearing panel's order after their request was denied.

[¶ 29] Dyer contends he should not be disciplined for failing to respond to the inquiry committee's request and the hearing panel's order because the law was not clear that he could disclose the information without violating Rule 1.6. Rule 8.1(b) requires that a lawyer "knowingly" fail to respond to a lawful demand for information. Under the Rules of Professional Conduct, "knowingly" is defined as "actual knowledge of the fact in question. A person's knowledge may be inferred from the person's conduct in the circumstances." N.D.R. Prof. Conduct 1.0(g). An attorney's refusal to comply with an unprecedented request for information in a disciplinary matter until after a court reviews the request should not be used against the attorney in the disciplinary matter. *See Florida Bar v. Senton*, 882 So.2d 997, 1002 (Fla.2004) (request to submit a blood sample).

[¶ 30] However, this matter is different. The plain language of Rule 1.6 states a lawyer may disclose information relating to the representation of a client to respond to allegations in any proceeding concerning the lawyer's representation of the client. The clear language of the rule permitted Dyer and Summers to disclose the requested information. Although Dyer and Summers initially acted appropriately by objecting to the request to disclose the information, there is no

evidence in this record indicating that Dyer and Summers attempted to negotiate with the inquiry committee to limit the disclosure of confidential information. *Cf. State ex rel. Okla. Bar Ass'n v. Krug*, 2004 OK 28, ¶ 20, 92 P.3d 67 (attorney did not violate Rule 8.1(b) because she maintained communication with the disciplinary counsel and requested further information she was entitled to so she could fully respond to the accusations). Moreover, Dyer and Summers' response became inappropriate as the matter proceeded and they continued to refuse to disclose any of the requested information. The hearing panel granted Disciplinary Counsel's motion to compel, this Court denied Dyer and Summers' request for a supervisory writ, but they continued to refuse to comply with the hearing panel's order. A lawyer knowingly fails to respond when he or she fails to comply with an order requiring disclosure. *See In re Cater*, 887 A.2d 1, 17 (D.C.2005). An attorney violates Rule 8.1(b) when he or she repeatedly fails to respond to requests for information from the disciplinary authority. *See, e.g., Attorney Grievance Comm'n of Maryland v. Van Nelson*, 425 Md. 344, 40 A.3d 1039, 1049 (2012). Dyer and Summers knowingly failed to respond to the lawful demand from the disciplinary authorities.

[¶ 31] Dyer and Summers were not prohibited from disclosing the information the inquiry committee and hearing panel requested under Rule 1.6, and we conclude they violated Rule 8.1 by failing to provide the requested information.

V

[¶ 32] Summers argues the hearing panel erred in failing to dismiss the petition because the original complainant did not testify before the hearing panel. Citing *In re D.H.*, 507 N.W.2d 314 (N.D. 1993), Summers claims the complainant

must testify about the foundation of the original complaint.

[¶ 33] *D.H.* is different from this proceeding. In *D.H.*, 507 N.W.2d at 314–15, the district court ordered D.H. be committed based on the testimony of a psychiatrist, who based his opinion partially on the allegations in the commitment petition. The Court held there was not clear and convincing evidence that D.H. was a threat to himself or others, which is required for commitment, because there was no evidence about the harmful behavior alleged in the petition, the psychiatrist was the only witness to testify at the hearing, the psychiatrist's opinion was partially based on the allegations in the petition, and there was no evidence of other harmful behavior. *Id.* at 315–16. The Court did not hold a complainant must testify in all cases; rather, we held there must be evidence to support the petition and the allegations in the petition do not have evidentiary value.

[¶ 34] Here, as we have noted, there was evidence presented to support the allegations and the hearing panel's decision was based on the evidence presented at the hearing and not on the allegations in the petition. The hearing panel did not err in failing to dismiss the petition.

VI

[¶ 35] Dyer, Summers, and Disciplinary Counsel challenge the hearing panel's recommended sanction. The hearing panel recommended Dyer and Summers both be suspended from the practice of law for nine months, with the potential of six months or less to be suspended if reinstatement is ordered, and they be allowed to return to the practice of law early if they complied with certain conditions. The hearing panel also recommended they each pay half the costs of the disciplinary proceeding in the amount of $3,957.26.

[¶ 36] We are guided by the North Dakota Standards for Imposing Lawyer Sanctions in determining the appropriate sanction, but we consider each disciplinary matter on its own facts. *In re Disciplinary Action Against Stensland,* 2011 ND 110, ¶ 20, 799 N.W.2d 341. In imposing a sanction, we consider: "(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." N.D. Stds. Imposing Lawyer Sanctions 3.0.

[¶ 37] The hearing panel found Dyer and Summers violated Rule 8.1, and considered N.D. Stds. Imposing Lawyer Sanctions 6.22 and 7.2 in deciding suspension is appropriate. Standard 6.2, N.D. Stds. Imposing Lawyer Sanctions, applies where the attorney fails to obey any obligation under the rules of a tribunal and states suspension is appropriate when the lawyer "knows that he or she is violating a court order or rule, and . . . causes potential interference with a legal proceeding." Standard 7.0, N.D. Stds. Imposing Lawyer Sanctions, applies in cases involving violations of duties owed to the profession and states suspension is generally appropriate when a lawyer "negligently engages in conduct that is a violation of a duty owed to the profession and causes injury or potential injury to a client, the public, or the legal system." In light of our decision that there was clear and convincing evidence Dyer and Summers violated Rule 1.15, it is appropriate to consider other standards as well. Standard 4.0, N.D. Stds. Imposing Lawyer Sanctions, applies in cases involving violations of duties owed to clients, and suspension is generally appropriate under Standard 4.12 when a lawyer "knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client."

[¶ 38] The hearing panel also found several aggravating factors exist under N.D. Stds. Imposing Lawyer Sanctions 9.2, including 9.22(e), bad faith obstruction of the disciplinary proceeding; 9.22(g), refusal to acknowledge wrongful nature of conduct; and 9.22(i), substantial experience in the practice of law. We have also considered Standard 9.22(c), pattern of misconduct, and 9.22(d), multiple offenses. Dyer and Summers did not present any evidence about mitigating factors.

[¶ 39] Summers contends the hearing panel should have recommended a sanction similar to the sanction recommended in *In re Disciplinary Action Against Kellington,* 2011 ND 241, 809 N.W.2d 298. However, the facts in *Kellington* are different. Kellington violated N.D.R. Prof. Conduct 5.3, 1.15, and 1.16; she participated in the Lawyer Assistance Program and the development of an Individualized Assistance Plan; she timely made a good faith effort to make restitution; she was cooperative with the proceedings; and she showed remorse. *Id.* at ¶ 4. In this case, there are no mitigating factors, there are multiple aggravating factors, and Dyer and Summers violated different rules.

[¶ 40] We agree with the hearing panel that suspension is an appropriate sanction, but we believe a nine-month suspension without provision for earlier reinstatement is appropriate because Dyer and Summers also violated N.D.R. Prof. Conduct 1.15.

## VII

[¶ 41] We conclude Dyer and Summers violated N.D.R. Prof. Conduct 1.15 and 8.1. We order that Dyer and Summers be suspended from the practice of law for nine months, effective August 1, 2012, and that each pay $3,957.26 in costs for the disciplinary proceedings, payable to the Secretary of the Disciplinary Board. Dyer and Summers must comply with N.D.R. Lawyer Discipl. 6.3 regarding notice and any reinstatement is governed by N.D.R. Lawyer Discipl. 4.5. Summers also was disciplined in Supreme Court case number 20120061, and the sanctions in the two cases will run concurrently.

[¶ 42] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, GARY H. LEE, D.J., DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.

[¶ 43] The Honorable GARY H. LEE, D.J., sitting in place of MARING, J., disqualified.