2007 ND 203

In the Matter of the Application for DISCIPLINARY ACTION AGAINST Samuel S. JOHNSON, a Member of the Bar of the State of North Dakota.

Disciplinary Board of the Supreme Court of the State of North Dakota, Petitioner

v.

Samuel S. Johnson, Respondent.

Nos. 20070107, 20070108.

Supreme Court of North Dakota.

Dec. 19, 2007.

Paul W. Jacobson, Disciplinary Counsel, Bismarck, N.D., for petitioner.

Ronald H. McLean (argued), and Joseph A. Wetch, Jr. (on brief), Serkland Law Firm, Fargo, N.D., for respondent.

SUSPENSION ORDERED.

PER CURIAM.

[¶ 1]   Samuel S. Johnson and Disciplinary Counsel petitioned this Court for review of a hearing panel's report and recommendation of suspension.  We conclude

there is clear and convincing evidence Johnson violated N.D.R. Prof. Conduct 3.3, 4.1, 4.4, 8.1, and 8.4, and N.D.R. Lawyer Discipl. 1.2(A), and we order Johnson be suspended for 60 days and pay the costs of the disciplinary proceeding in the amount of $8,670.36.

## I

[¶ 2] Johnson was admitted to practice law in North Dakota on November 9, 1989, and was practicing law in Wahpeton during the time relevant to this case. The Disciplinary Counsel alleges Johnson violated the disciplinary rules in two separate incidents. The first incident involves a letter Johnson sent to Roger Gibbon in response to Gibbon's attempts to collect witness fees Johnson owed. The second incident involves statements Johnson made to the district court while representing Wesley Bladow in a divorce proceeding.

## A

[¶ 3] In 2003, Johnson subpoenaed Roger Gibbon and Gibbon's father for depositions in a divorce case. Johnson sent checks to Gibbon and his father to cover fees for one day's attendance and mileage and travel expenses as required under N.D.R.Civ.P. 45. Gibbon and his father traveled to Wahpeton for the depositions, but because of settlement negotiations in the case, the depositions did not occur. Johnson stopped payment on the checks.

[¶ 4] Gibbon filed a complaint with the Disciplinary Board, and Johnson received an April 2, 2004, admonition from the Inquiry Committee Northeast:

> *The Committee found* that Attorney Samuel S. Johnson violated Rule 3.4(C), RPC, knowingly disobey an obligation under the rules of a tribunal, in that he Johnson issued subpoenas to complainant and his father to travel to Johnson's office in Wahpeton for a deposition in a civil case, along with which he served each with a check in the amount of $69.20, provided to the witnesses pursuant to the requirement of Rule 45, NDCivP, which requires that a subpoena for attendance must be accompanied by the tendering of fees for one day's attendance and the mileage and travel expense. Complainant and his father traveled to Wahpeton pursuant to the subpoenas. Thereafter, Johnson stopped payment on the checks. Therefore, Attorney Samuel S. Johnson is hereby issued an ADMONITION by the Inquiry Committee Northeast.

Johnson appealed the admonition to the Disciplinary Board of the Supreme Court. On June 17, 2004, the Disciplinary Board approved the admonition, and Johnson was sent notice of the approval.

[¶ 5] After receiving the admonition, Johnson did not pay the witness and mileage fees. Gibbon sent Johnson invoices for his and his father's witness fees. On October 13, 2004, Johnson sent Gibbon a letter in response to what Johnson called the "FRAUDULENT BILL," which said:

> You are hereby notified pursuant to the Federal Fair Debt Collections Act that you may no longer submit any documentation to me or my firm. Any future documentation submitted to me or my firm will be challenged will [sic] all civil or other alternatives available to me and my firm.
>
> Please do not take this letter lightly, Mr. Gibbon. I have had quite enough of your harassment. You do not have the right to charge me.
>
> Mr. Gibbon, you are entering an area within which you do not want to venture.
>
> Accordingly, no further correspondence, including any billing, should be submitted to me or my firm by you, any repre-

sentative on your behalf or your company.

[¶ 6] After receiving Johnson's letter, Gibbon filed a second disciplinary complaint. Johnson paid Gibbon the mileage and witness fees after the second complaint was filed.

[¶ 7] Johnson testified at a hearing on the second complaint that he believed he did not owe Gibbon the witness and mileage fees and he believed the Fair Debt Collection Practices Act ("Act"), 15 U.S.C. § 1692, applied to this transaction. Johnson testified he researched the Act before sending the letter to Gibbon, and after the second disciplinary complaint was issued, he concluded there was a good-faith basis for asserting the Act applied to this transaction.

[¶ 8] The hearing panel found:

8. Johnson testified that he extensively researched the Federal Fair Debt Collections Act prior to sending the letter of October 13, 2004 and determined that there was a good faith basis for asserting that the Federal Fair Debt Collections Act applied to this transaction. Johnson's testimony on that topic was not credible. There was no good faith basis for making that allegation. Further, the alleged good faith basis for asserting the application of the Federal Fair Debt Collections Act was developed by Johnson after his letter of October 13, 2004 was written and a disciplinary complaint was issued.

9. In the letter of October 13, 2004, Johnson made statements of fact and law that he knew to be untrue in that Johnson knowingly made false statements that the Federal Fair Debt Collections Act prohibited Gibbon from attempting to collect the amount of the checks upon which Johnson had stopped payment and that the amount claimed was not due.

10. The letter written by Johnson on October 13, 2004 had no substantial purpose other than to embarrass or burden a third person in that Johnson's intention was to threaten and intimidate Gibbon in an effort to avoid payment of the witness and mileage fees that Johnson knew were due and owing to Gibbon and his father. Johnson had no basis for denying that the debt was owed.

11. Johnson was representing a client at the time that he wrote the letter dated October 13, 2004 to Gibbon in that the service of the Subpoenas and checks for witness and mileage fees arose out of Johnson's representation of Lisa Gibbon in late 2002 and early 2003 and Johnson's October 13, 2004 letter involved that representation.

The hearing panel concluded Johnson violated N.D.R. Prof. Conduct 4.1 and 4.4.

B

[¶ 9] Johnson represented Wesley Bladow in a divorce from Kristine Berg. A judgment was entered in the initial divorce proceeding in January 2003. In August 2003, Berg moved to amend the judgment to modify custody provisions and resolve issues about debt obligations.

[¶ 10] On several occasions before November 1, 2003, Bladow and Johnson discussed whether Berg would be willing to settle all pending issues in the re-opened divorce proceedings if Bladow would pay a lump sum of $20,000 to $25,000. Bladow did not have the financial means to pay or borrow that much money. On or before November 1, 2003, Johnson reviewed N.D.R. Prof. Conduct 1.8, which prohibits a lawyer from providing financial assistance to a client except "a lawyer may guarantee a loan ... provided that the client remains ultimately liable for repayment of the loan without regard to the

outcome of the litigation. . . ." N.D.R. Prof. Conduct 1.8(e). Johnson met with Bladow on November 1, 2003, and they agreed Johnson would guarantee a loan for Bladow in the amount of $25,000 if Berg would accept a lump sum payment to settle the pending issues. Johnson prepared a document entitled "Agreement to Guarantee Loan," which set out the terms and conditions under which Johnson would agree to guarantee a loan for Bladow. Johnson and Bladow signed the agreement on November 1, 2003. Johnson and Bladow agreed Bladow would sign a promissory note at Johnson's bank and Johnson would guarantee the promissory note if Berg accepted the settlement offer. Although it was not included in the written agreement, Johnson and Bladow also agreed Johnson would make payments on the loan until Bladow was financially able to make the payments and repay Johnson.

[¶ 11] On November 17, 2003, Johnson sent a letter to Berg's attorney proposing a settlement and advising the attorney that Johnson would advance Bladow money to pay Berg the proposed settlement. On December 1, 2003, Johnson sent Berg's attorney another letter proposing a second settlement offer. The letter said, "[s]ince [Bladow] cannot afford to pay any significant sums of money to [Berg], I have agreed to advance [Bladow] some money to settle various issues in relation to this matter. In that regard, I would pay [Berg] the sum of $20,000. . . ." Johnson did not disclose in either letter that Bladow would borrow the money and Johnson would guarantee the loan. Berg did not accept either offer. Bladow did not take out a loan at Johnson's bank, and Johnson did not guarantee a loan for Bladow.

[¶ 12] During a January 2004 hearing on Berg's motion to amend the divorce judgment, Berg offered the proposed settlement offers as evidence of Bladow's abil-

ity to pay the amounts ordered in the initial judgment and the attorney fees for the current litigation. Johnson objected and said, "That was a Rule 408 settlement offer and that was an offer made by me, Judge and [sic] offer with respect to certain sums of money to be paid by me, not by Mr. Bladow, by me." At a February 5, 2004, hearing, Bladow testified about the settlement offer:

Q: Isn't it true that it's your position that you owe your attorney $30,000.00 and you haven't paid him a dime?

A: Yes.

Q: Yet he's willing to pay on your behalf $20,000.00—

A. Pretty nice guy isn't he.

Q: —is that true?

A: Yes.

. . . .

Q: And that's all coming out of his pocket?

A: I guess.

Bladow did not testify that he had planned to take out a loan and Johnson was going to guarantee the loan. In discussing Bladow's failure to pay amounts ordered in the initial divorce judgment, the district court said:

[Bladow's] explanation for nonpayment is that he did not have the money. He has offered extensive financial records to indicate his indebtedness, his net worth and the obligations that he has not been able to meet. [Berg] has countered this by saying that [Bladow], through his attorney, was willing to offer $20,000.00 in settlement of this matter if [Berg] would simply turn the children over to him. Apparently the money was going to be advanced by [Bladow's] attorney. Whether this was a bluff, this Court has no way of knowing. It would certainly seem strange that an attorney already having extensive legal fees owing to him

by [Bladow] would advance [Bladow] $20,000.00. To this Courts way of thinking, that type of conduct would border on champerty.

[¶ 13] Berg filed a complaint with the Disciplinary Board. In response to Berg's complaint, Johnson's attorney sent the Inquiry Committee Southeast a November 30, 2005, letter explaining the factual background and addressing whether Johnson violated N.D.R. Prof. Conduct 1.8, which prohibits providing financial assistance to a client. The letter claimed Johnson did not violate N.D.R. Prof. Conduct 1.8, because he agreed to guarantee a loan for Bladow, which is allowed under N.D.R. Prof. Conduct 1.8(e)(3) and is not a prohibited transaction. The letter said Bladow wanted to settle the pending issues in the divorce matter with Berg, but he did not have the financial means. The letter explained Johnson offered to guarantee a loan to allow Bladow to make a settlement offer and explained the terms and conditions of the loan guarantee agreement. The letter further explained that while Johnson used the words "agreed to advance" and "I will pay" in the settlement offers, he was actually advancing and paying out of the contemplated loan for which he would be the guarantor. The letter failed to disclose that Johnson and Bladow agreed Johnson would make all loan payments until Bladow was able to make the payments himself and repay Johnson.

[¶ 14] Disciplinary Counsel filed a formal petition for discipline, and a hearing was held. The hearing panel found Johnson knowingly made a false statement of fact to the district court when he said he personally made the settlement offer, because Johnson had already entered into an agreement to guarantee a loan for his client and he knew any money paid under the settlement offer would come from the loan. The hearing panel also found John-

son allowed his client to make false statements to the court without making an effort to clarify the misleading testimony when Bladow's testimony suggested money paid under the settlement offer would come from Johnson, because Johnson knew the money would be borrowed by Bladow and Johnson would guarantee the loan. The hearing panel concluded Johnson violated N.D.R. Prof. Conduct 3.3 and 8.4 and N.D.R. Lawyer Discipl. 1.2(A) by making false statements to the court. The Disciplinary Counsel argued Johnson also violated N.D.R. Prof. Conduct 8.1 by not disclosing the entire agreement he made with Bladow to the Inquiry Committee in the November 30, 2005, letter, but the hearing panel did not make any findings about this allegation.

C

[¶ 15] The hearings in both disciplinary matters were held together, and the hearing panel issued one report. The hearing panel considered sanctions from reprimand to disbarment for all of Johnson's violations, and recommended Johnson be suspended from the practice of law for 60 days and pay $8,670.36 in costs and expenses of the disciplinary proceeding.

D

[¶ 16] The hearing panel had jurisdiction under N.D.R. Lawyer Discipl. 3.1(E). Disciplinary Counsel and Johnson timely filed petitions for review under N.D.R. Lawyer Discipl. 3.1(F). This Court has jurisdiction under N.D. Const. art. VI, § 3, N.D.C.C. § 27–14–01, and N.D.R. Lawyer Discipl. 3.1(F).

II

[¶ 17] The standard of review for disciplinary proceedings is well established:

We review disciplinary proceedings de novo on the record. We accord due weight to the findings, conclusions, and recommendations of the hearing panel, but we do not act as a mere rubber stamp. Disciplinary counsel bears the burden of proving each alleged violation of the disciplinary rules by clear and convincing evidence. Each disciplinary case must be considered upon its own facts to decide what discipline, if any, is warranted. *Disciplinary Bd. v. Chinquist*, 2006 ND 107, ¶ 7, 714 N.W.2d 469 (citations omitted). We give special deference to the hearing panel's findings on matters of conflicting evidence because the hearing panel had the opportunity to hear the witnesses and observe their demeanor. *Disciplinary Bd. v. Bullis*, 2006 ND 228, ¶ 12, 723 N.W.2d 667.

### III

[¶ 18] Johnson argues there is not clear and convincing evidence he violated N.D.R. Prof. Conduct 4.1 and 4.4 by sending the October 13, 2004, letter to Gibbon.

### A

■ [¶ 19] Rule 4.1, N.D.R. Prof. Conduct provides, "[i]n the course of representing a client a lawyer shall not make a statement to a third person of fact or law that the lawyer knows to be false." The rules of professional conduct define "knows" as "actual knowledge of the fact in question." N.D.R. Prof. Conduct 1.0(g). Knowledge may be inferred by the person's conduct in the circumstances. *Id.*

[¶ 20] The hearing panel found Johnson made false statements in his letter to Gibbon, including the statements that the Fair Debt Collection Practices Act applied and that the amount claimed was not due. Johnson claims the evidence does not support the hearing panel's findings, because

he had a good-faith belief the Act applied. Johnson testified he extensively researched the Act before he wrote the letter to Gibbon and after the disciplinary complaint was made, and on the basis of that research he believed the Act applied and he could stop Gibbon from contacting him to collect the debt. Johnson also testified he could not recall how much time he spent researching whether the Act applied before he wrote the letter to Gibbon.

■ [¶ 21] The Act states, "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, . . . ." 15 U.S.C. § 1692c(c). The Act only applies to debt that is a consumer debt, which is an "obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, . . . ." 15 U.S.C. § 1692a(5). The Act generally does not apply when a creditor is attempting to collect its own debts; rather, the act only applies if the debt is being collected by a business whose principal purpose is to collect debts, or who regularly collects debts owed to another. 15 U.S.C. § 1692a(6); *Volden v. Innovative Fin. Sys., Inc.*, 440 F.3d 947, 950–51 (8th Cir.2006).

■ [¶ 22] The hearing panel found Johnson's testimony that he extensively researched the Act before sending the letter and decided there was a good-faith basis for claiming the act applied to the transaction was not credible. The hearing panel found Johnson did not have a good-faith basis for claiming the Act applied, and furthermore, Johnson's alleged good-faith basis was not developed until after

the letter was written and a disciplinary complaint was issued. We defer to the hearing panel's findings on the credibility of a witness, because the hearing panel had the opportunity to observe the witness's demeanor and hear the witness testify. *See Bullis*, 2006 ND 228, ¶ 12, 723 N.W.2d 667. The evidence supports the hearing panel's findings, and we conclude Johnson knowingly made false claims that the Fair Debt Collection Practices Act prohibited Gibbon from contacting Johnson to collect the witness and mileage fees.

[¶ 23] Moreover, Johnson made a false statement in the letter to Gibbon when he claimed he did not owe the witness and mileage fees. Johnson's letter referenced the "FRAUDULENT BILL" and said "[y]ou do not have the right to charge me." Before writing the letter, Johnson had received an April 2, 2004, admonition from the Inquiry Committee for disobeying an obligation by stopping payment on the checks to Gibbon and Gibbon's father. Johnson knew he owed the witness and mileage fees, and therefore his claim that the bill was fraudulent and Gibbon did not have the right to charge for the fees was false.

[¶ 24] We conclude there is clear and convincing evidence Johnson violated N.D.R. Prof. Conduct 4.1 by making false statements in his letter to Gibbon, including the statements that the Fair Debt Collection Practices Act prohibited Gibbon from contacting him to collect the witness and mileage fees and that he did not owe the fees.

### B

[¶ 25] Rule 4.4, N.D.R. Prof. Conduct, provides, "[i]n representing a client, a lawyer shall not use means that have no substantial purpose other than to delay or to embarrass or burden a third person, . . . ." The hearing panel found Johnson's letter to Gibbon had no substantial purpose other than to embarrass or burden Gibbon, because Johnson's intent was to threaten Gibbon in an effort to avoid paying the witness and mileage fees he owed. The hearing panel also found Johnson was representing a client when he wrote the letter to Gibbon. Johnson argues there is not clear and convincing evidence he violated N.D.R. Prof. Conduct 4.4.

[¶ 26] Johnson claims he was not representing a client within the meaning of the rule when he wrote the letter, because the letter was written approximately twenty months after Gibbon was to be deposed and nineteen months after Johnson's involvement in the underlying divorce case ended. But Johnson's letter cannot be considered in a vacuum. Johnson's obligation to pay Gibbon witness and mileage fees arose out of his representation of a client in a divorce matter, and the letter involved that representation. We conclude there is clear and convincing evidence to support the hearing panel's finding that Johnson was representing a client when he sent the letter to Gibbon.

[¶ 27] Johnson contends he had a substantial purpose for writing the letter. Johnson claims the intent of the letter was not to threaten Gibbon, but to stop Gibbon from sending him more bills. Johnson had received an admonition for stopping payment of the checks before he sent the letter to Gibbon. Johnson knew he was required to pay the fees when he sent the letter claiming Gibbon did not have a right to charge him, threatening that any future documentation submitted to Johnson or his firm would be challenged, and warning "you are entering into an area within which you do not want to venture." The only purpose Johnson's letter served was to threaten and intimidate Gibbon to avoid payment of the witness and mileage fees

Johnson knew he owed. We conclude there is clear and convincing evidence Johnson violated N.D.R. Prof. Conduct 4.4.

## IV

[¶ 28]   Johnson argues the hearing panel erred in finding he violated N.D.R. Prof. Conduct 3.3 and 8.4 and N.D.R. Lawyer Discipl. 1.2(A) by making false statements to the district court about the settlement offer in the Bladow divorce proceedings. The Disciplinary Counsel argues Johnson also violated N.D.R. Prof. Conduct 8.1 by not disclosing to the Inquiry Committee the entire agreement he made with Bladow. Johnson claims he did not violate the rules of professional conduct, and he was truthful and candid with the court and the Inquiry Committee at all times.

## A

■ [¶ 29]   Rule 3.3(a), N.D.R. Prof. Conduct, provides, "[a] lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]"   Rule 8.4(f), N.D.R. Prof. Conduct, provides, "[i]t is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice, . . . ." Rule 1.2(A)(3) and (8), N.D.R. Lawyer Discipl., provides:

A.   Grounds for Discipline.   A lawyer may be disciplined for the following misconduct:

. . . .

(3) Engaging in conduct involving dishonesty, fraud, deceit or misrepresentation;

. . . .

(8) Engaging in conduct prejudicial to the administration of justice, including willful violation of a valid order of the court or board imposing discipline, or willfully failing to respond to a lawful demand from a disciplinary authority, except that this rule does not require disclosure of information otherwise protected by applicable rules of privilege or confidentiality[.]

[¶ 30]   This Court summarized the high duty of candor placed upon attorneys in *Disciplinary Bd. v. Kaiser*, 484 N.W.2d 102, 108 (N.D.1992) (citation omitted):

"Truth and candor are synonymous with justice, and honesty is an implicit characteristic of the legal profession." ABA, *The Judicial Response to Lawyer Misconduct*, III.1, III.3 (1984). The primary function of our judicial system is to find the truth to reach a just conclusion. . . . Our courts are almost "wholly dependent on members of the bar to marshal and present the true facts . . . ."

In some circumstances, the failure to make a disclosure is the equivalent of an affirmative misrepresentation. N.D.R. Prof. Conduct 3.3, Comment.

[¶ 31]   In *Disciplinary Bd. v. Lamont*, 1997 ND 63, ¶ 11, 561 N.W.2d 650, an attorney gave deceptive, misleading, and evasive testimony about whether his client was paying another person's attorney's fees and litigation expenses. The attorney testified he personally agreed to pay the fees and his client was not involved in the financial arrangement, but the documentary evidence showed the attorney had previously represented that his client had agreed to pay the fees with the bills going through the attorney's office to disguise the payments. *Id.* We concluded the attorney's testimony misrepresented the actual agreement and was deceptive and misleading, but did not affect the outcome of the trial and did not result in a benefit to the attorney or his client. *Id.* at ¶¶ 13, 20. We concluded the attorney violated N.D.R. Prof. Conduct 3.3 and N.D.R. Lawyer Dis-

cipl. 1.2(A)(3), and we ordered he be suspended for sixty days. *Id.* at ¶¶ 16, 21.

[¶ 32] In this case, Johnson's statements to the district court were also deceptive and misleading. The hearing panel found that on or before November 1, 2003, Johnson reviewed the provisions of N.D.R. Prof. Conduct 1.8, which prohibits an attorney from providing financial assistance to a client. Johnson agreed to guarantee a loan to Bladow for approximately $25,000, and Johnson and Bladow signed the agreement to guarantee the loan on November 1, 2003. On January 21, 2004, Johnson told the district court, "That was a Rule 408 settlement offer and that was an offer made by me, Judge and [sic] offer with respect to certain sums of money to be paid by me, not by Mr. Bladow, by me." Bladow's testimony, on February 5, 2004, suggested Johnson would pay the money for the settlement offer without disclosing the money would come from a loan Bladow would take out.

[¶ 33] The hearing panel found Johnson knowingly made a false statement of fact to the district court on January 21, 2004, by stating that the settlement offer was made by Johnson, personally, and not by his client when Johnson had already entered into an agreement to guarantee a loan to be taken out by his client and he knew that any money to be paid under the settlement offer was to come from the loan. The hearing panel further found Johnson allowed his client to make statements to the district court that Johnson knew were false without making an effort to clarify the false statements, when Bladow's testimony suggested the settlement offer was being paid by Johnson and Johnson knew the money was to be borrowed by Bladow with Johnson guaranteeing the loan. The hearing panel concluded N.D.R. Prof. Conduct 3.3 and 8.4 and N.D.R. Lawyer Discipl. 1.2(A) were violated.

[¶ 34] After reviewing the record, we conclude the evidence supports the hearing panel's findings and conclusions that Johnson knowingly made false statements to the district court. We conclude there is clear and convincing evidence Johnson violated N.D.R. Prof. Conduct 3.3 and 8.4 and N.D.R. Lawyer Discipl. 1.2(A).

B

■■■■ [¶ 35] The Disciplinary Counsel argues Johnson also violated N.D.R. Prof. Conduct 8.1(a), which states a lawyer shall not knowingly make a false statement of material fact in connection with a disciplinary matter, when Johnson did not disclose the entire agreement with Bladow to the Inquiry Committee. The hearing panel did not address the Disciplinary Counsel's claim.

[¶ 36] In Johnson's November 30, 2005, written response to the informal complaint filed by Berg, Johnson specifically addressed whether he violated N.D.R. Prof. Conduct 1.8. The letter to the Inquiry Committee discussed the agreement between Johnson and Bladow, but failed to disclose Johnson would make all payments on the loan until Bladow was financially able to take over the payments and repay Johnson.

[¶ 37] Johnson did not disclose the entire settlement agreement to the Inquiry Committee, just as he did not disclose the entire settlement agreement to the district court. Johnson knowingly made false statements of material fact to the Inquiry Committee. We conclude there is clear and convincing evidence Johnson violated N.D.R. Prof. Conduct 8.1(a).

V

■■■■ [¶ 38] The hearing panel recommended Johnson be suspended from the practice of law for sixty days and pay

$8,670.36 in costs and expenses for the disciplinary proceeding. Johnson argues a reprimand would be a more appropriate sanction. Johnson claims he has recognized he "over identifies" with his clients' causes, and he has been working with two psychologists and a consultant to change his behavior, to identify problems with his practice, and to help implement changes. Johnson also urges this Court to consider that he referred himself and has been accepted into the Lawyer Assistance Program for diversion from discipline under N.D.R. Lawyer Discipl. 6.6, and an individualized assistance plan has been developed. The Disciplinary Counsel urges this Court to suspend Johnson from the practice of law for a period of six months and one day, which would require Johnson to prove his rehabilitation under N.D.R. Lawyer Discipl. 4.5.

[¶ 39] For violations of duties owed to the public, N.D. Stds. Imposing Lawyer Sanctions 5.11 provides disbarment is generally appropriate when:

(a) a lawyer engages in serious conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or

(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

Suspension is appropriate when "a lawyer knowingly engages in conduct which does not contain the elements listed in Standard 5.11 but that seriously adversely reflects on the lawyer's fitness to practice." N.D.

Stds. Imposing Lawyer Sanctions 5.12. Reprimand is appropriate when "a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice." N.D. Stds. Imposing Lawyer Sanctions 5.13.

[¶ 40] Johnson knowingly made false statements in his letter to Gibbon by claiming he did not owe the witness fees and the Fair Debt Collection Practices Act prohibited Gibbon from contacting him to collect the fees. Generally, a reprimand would be the appropriate sanction under N.D. Stds. Imposing Lawyer Sanctions 5.13, but the Standards for Imposing Lawyer Sanctions are flexible, and we may impose a greater sanction when there are aggravating circumstances. *See* N.D. Stds. Imposing Lawyer Sanctions 1.3 and 9.2. In this case, Johnson had already received an admonition for stopping payment of a check for the witness fees, and his acts were in defiance of the admonition. We conclude suspension is appropriate.

[¶ 41] In cases involving conduct that is prejudicial to the administration of justice or dishonesty, fraud, deceit, or misrepresentation to a court, suspension is appropriate for a violation of duties owed to the legal system when:

a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

N.D. Stds. Imposing Lawyer Sanctions 6.12. A reprimand is appropriate when "a lawyer is negligent either in determining whether statements or documents are false or in taking remedial action when material

information is being withheld,...." N.D. Stds. Imposing Lawyer Sanctions 6.13.

[¶ 42] Johnson knowingly made false statements to the district court when he said he personally made the settlement offer knowing that he had already entered into an agreement to guarantee a loan to be taken out by Bladow and that any money paid under the settlement offer would come from Bladow's loan. Johnson also knew material information was being withheld when Bladow's testimony suggested Johnson was personally making the settlement offer, and he failed to take any remedial action to clarify the testimony. Although Johnson's misleading statements to the district court did not affect the actual outcome of the Bladow litigation, it was still a serious violation. *See Lamont,* 1997 ND 63, ¶¶ 19–20, 561 N.W.2d 650. "An attorney's deliberate use of false testimony or falsified evidence in a judicial proceeding is antithetical to the oath, the standards, and the ideals of the legal profession." *Disciplinary Bd. v. McDonald,* 2000 ND 87, ¶ 36, 609 N.W.2d 418. Johnson acted with knowledge, and therefore a suspension is the appropriate sanction.

[¶ 43] We may also consider whether there are any aggravating or mitigating factors when deciding what sanction to impose. N.D. Stds. Imposing Lawyer Sanctions 3.0. Aggravating factors include prior discipline, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law. N.D. Stds. Imposing Lawyer Sanctions 9.2. Johnson has been practicing law for approximately eighteen years. Johnson has five prior disciplinary offenses from 1997 through 2004, including the admonition he received for stopping payment on the checks to Gibbon and Gibbon's father. Johnson has refused to acknowledge that his conduct violated the disciplinary rules.

[¶ 44] We may also consider mitigating factors under N.D. Stds. Imposing Lawyer Sanctions 9.3, including personal or emotional problems, interim rehabilitation, and character or reputation. Johnson testified he "over-identifies" with and seeks validation through his clients' causes, but he has recognized that he needs to change and has worked to change his behavior. Johnson presented testimony from various individuals about his character and reputation. Johnson also requests we consider his participation in the Lawyer Assistance Program, and we agree that his participation in the program is appropriate.

[¶ 45] Under this Court's standards for imposing discipline, we conclude suspension is the appropriate sanction for Johnson's violations of the disciplinary rules.

VI

[¶ 46] We order that Johnson be suspended for a period of sixty days beginning January 21, 2008. We further order that Johnson pay the costs and expenses of the disciplinary proceeding in the amount of $8,670.36.

[¶ 47] GERALD W. VANDE WALLE, C.J., and JOHN C. McCLINTOCK, JR., D.J., and DALE V. SANDSTROM, DANIEL J. CROTHERS, and CAROL RONNING KAPSNER, JJ., concur.

[¶ 48] The Honorable JOHN C. McCLINTOCK, Jr., D.J., sitting in place of MARING, J., disqualified.