2013 ND 111

**In the Matter of the Application for DISCIPLINARY ACTION AGAINST Michael S. McINTEE, A Member of the Bar of the State of North Dakota.**

**Disciplinary Board of the Supreme Court of the State of North Dakota, Petitioner**

v.

**Michael S. McIntee, Respondent.**

**Nos. 20130119, 20130120.**

Supreme Court of North Dakota.

June 25, 2013.

PER CURIAM.

[¶1] The Court has before it the findings, conclusions, and recommendation of a Hearing Panel recommending Michael S. McIntee be reprimanded for violation

N.D.R. Prof. Conduct 1.7(c) and 1.9, and pay the cost of the disciplinary proceeding of $7,350.80. We accept the findings, conclusions, and recommendation of the Hearing Panel.

[¶ 2] McIntee was admitted to the Bar of the State of North Dakota on September 22, 1976. McIntee was served a Summons and Petition for Discipline on October 19, 2011, and filed his Response dated November 7, 2011. The Petition alleged that McIntee violated N.D.R. Prof. Conduct 1.7(a) and/or (c) and 1.9 in the course of representing Michael Striha and Judy Ritterman co-personal representatives of the estate of their mother, Eleanor Striha.

[¶ 3] The matter was submitted to a Hearing Panel of the Disciplinary Board, and a hearing was held November 14, 2012. On April 19, 2013, the Hearing Panel filed its findings, conclusion, and recommendation with this Court.

[¶ 4] The Hearing Panel made the following findings. In 1999, McIntee prepared a will for Eleanor Striha. Following her 2004 death, McIntee met with the co-personal representatives of the estate to open the will and begin the probate process. The co-personal representatives were siblings, and both were beneficiaries and devisees under their mother's will, along with two other siblings. Having prepared the will, McIntee was aware the distribution of the farmland to the children included severe limitations on the use and enjoyment of the land they inherited. McIntee did not discuss any problems or issues that may arise in situations when two co-personal representatives are appointed. He did not advise Ritterman that, as personal representative of her mother's estate, she could hire her own attorney, and no written fee agreement between McIntee and Ritterman was executed employing McIntee to act as her attorney in administering her duties as co-

personal representative of her mother's estate.

[¶ 5] During the administration of the estate, Ritterman expressed concern to McIntee that she had difficulty contacting him, that all the terms of her mother's estate be carried out, and that she was unhappy not receiving copies of her mother's check and savings statements from Striha or him. She informed McIntee that unless she received the requested documents, she would not sign any papers for the estate. On July 14, 2005, McIntee responded to the concerns, noting there was "a great deal of animosity between the siblings," and telling her "I do not represent any of you individually but rather the estate of your mother. If one of you is unhappy with the conduct of the other sibling, you will need to hire your own attorney. As I stated, I will represent the estate and I do not represent Striha personally nor you personally nor the other two children."

[¶ 6] On September 7, 2005, McIntee forwarded several documents to Ritterman for her signature as personal representative, and informed her that, if she did not sign, McIntee would present them to the court. He also reminded Ritterman that, under the terms of her mother's will, if anyone attempted to break the will or change things, that person would receive at the most $10. Ritterman took this information to mean that, if she did not sign the documents, she would be taken to court and she would only receive $10 from her mother's estate.

[¶ 7] On January 11, 2006, McIntee sent a letter to the heirs of the estate, including an accounting of the estate, and setting a twenty-one day period for objections. Thereafter, McIntee prepared the Personal Representative's Verified Statement to Close the Estate, which Ritterman signed on April 13, 2006. According to

McIntee's testimony at the hearing, the estate was closed in April or May 2006.

[¶ 8] Following the administration of the estate, on January 22, 2008, McIntee's office, under his signature, sent a letter to Marvin Bonnett, brother of Striha and Ritterman and an heir of the estate, indicating that McIntee represents Michael Striha and his wife in all of their family dealings and real estate purchases. In the letter, McIntee discussed a dispute concerning Striha taking hay from land inherited by Bonnett with provisions allowing Striha to take hay, the right of Striha to purchase the land under certain circumstances, and the values of the land for Striha's purchase under their mother's will.

[¶ 9] On April 6, 2009, McIntee, as attorney for Michael Striha, signed a Complaint filed in the district court of Sheridan County, in which Striha brought an action against his siblings, including Bonnett and Ritterman, to secure the rights he asserted were granted to him under the will of the parties' mother, to secure a hay and crop lien and option to purchase, and to enjoin the defendants from interference with his right to the land. Before bringing the action, McIntee had not sought, or obtained, Ritterman's consent for his bringing the action on behalf of Striha against her.

[¶ 10] On October 6, 2012, the district court entered an Order holding that Striha was allowed to farm the land in question on a crop share basis, if a cash rent could not be agreed, and he was allowed to take hay from the property. The court noted in the Order that the case involved issues concerning conflicts in representation of the parties, which were not before the court, and would not be addressed.

■ [¶ 11] The Hearing Panel concluded McIntee violated N.D.R. Prof. Conduct 1.7(c), Conflict of Interest: General Rule, which provides: "A lawyer shall not represent a client if the representation of that client might be adversely affected by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interest unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation." ... [which] include[s] explanation of the implications of the common representation and the advantages and risks involved. The Hearing Panel determined McIntee should have been aware of the possibility that his clients, the co-personal representatives, would have different perspectives on the handling of the estate, and should have known his representation of Ritterman might be adversely affected by his responsibilities to Michael Striha. At the time McIntee assumed representation of Michael Striha and Ritterman, he was required to have obtained the consent of Ritterman to the common representation after consulting with her, which he did not do. Additionally, after becoming aware of Ritterman's unhappiness, McIntee did not advise Ritterman, as co-personal representative, that she could hire her own attorney, or did he advise her of the advantages and risks involved in the common representation. Instead of threatening her with a will provision he knew might be unenforceable, and advising her he did not represent her individually, McIntee should have withdrawn from his representation of Ritterman as co-personal representative, or obtained her consent to his continued representation.

■ [¶ 12] The Hearing Panel concluded that McIntee violated N.D.R. Prof. Conduct 1.9(a), Duties to Former Client, which provides: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related

matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents in writing." N.D.R. Prof. Conduct 1.9, Comment 3, defines "substantially related" matters as those that "involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." The action McIntee commenced in 2009 on behalf of Michael Striha against Ritterman and others is a substantially related matter in which Michael Striha's interests are materially adverse to the interests of Ritterman. The action involved the interpretation of their mother's will so as to enforce the duties and obligations set out by the terms of the will, which had been administered by Ritterman and Striha as co-personal representatives, both of whom McIntee represented in that capacity. McIntee did not obtain Ritterman's consent in writing, or otherwise, to bring the action against her.

[¶ 13] The Hearing Panel considered aggravating factor of prior disciplinary offenses under N.D. Stds. Imposing Lawyer Sanctions 9.22(a). In 2002, McIntee received an admonition for violation of N.D.R. Prof. Conduct 1.9, Conflict of Interest, and N.D.R. Prof. Conduct 1.6, Confidentiality of Information, in that he represented a client against an individual he had previously represented in a substantially related matter. In 2004, McIntee received an admonition for violation of N.D.R. Prof. Conduct 3.5, Impartiality and Decorum of the Tribunal, and N.D.R. Prof. Conduct 3.1, Meritorious Claims and Contentions, in that he engaged in ex parte communication with the trial judge in a child support matter and made claims of gender bias by persons within the child

support system and court which were without a basis.

[¶ 14] The Hearing Panel considered the following North Dakota Standards for Imposing Lawyer Sanctions in determining the appropriate discipline to impose:

1. N.D. Stds. Imposing Lawyer Sanctions 4.32, which provides suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client;

2. N.D. Stds. Imposing Lawyer Sanctions 4.33, which provides reprimand is generally appropriate when a lawyer is negligent in determining whether the representation will adversely affect another client, and causes injury or potential injury to a client;

3. N.D. Stds. Imposing Lawyer Sanctions 8.3(b), which provides reprimand is generally appropriate when a lawyer has received an admonition for the same or similar misconduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession;

4. N.D. Stds. Imposing Lawyer Sanctions 9.22(a) prior disciplinary offenses;

5. N.D. Stds. Imposing Lawyer Sanctions 9.22(d) multiple offenses;

6. N.D. Stds. Imposing Lawyer Sanctions 9.22(i) substantial experience in the practice of law; and

7. N.D. Stds. Imposing Lawyer Sanctions 9.32(m) remoteness of prior offenses.

[¶ 15] Based on the testimony and exhibits, the Hearing Panel found

that McIntee represented both Michael Striha and Ritterman as co-personal representatives of the estate of their mother. Additionally, the Panel rejected McIntee's assertion that his representation of Ritterman as personal representative does not preclude him from later bringing an action against her personally in a substantially related matter, stating that his assertion "paints too fine a line—the general public will not understand the distinction, and most people will feel betrayed just as Ritterman does in this case." The Hearing Panel recommended McIntee be reprimanded by the North Dakota Supreme Court and pay the costs of the disciplinary proceeding of $7,350.80.

[¶ 16] This matter was referred to the Supreme Court under N.D.R. Lawyer Discipl. 3.1(F). Objections to the findings, conclusions, and recommendation were due within 20 days of the service of the report of the Hearing Panel. No objections were received, and the matter was submitted to the Court for consideration.

[¶ 17] ORDERED, that the findings, conclusions, and recommendation of the Hearing Panel are accepted, and Michael S. McIntee is REPRIMANDED.

[¶ 18] IT IS FURTHER ORDERED, that McIntee pay the costs of the disciplinary proceeding of $7,350.80 within sixty days of entry of the judgment in this matter, payable to the Secretary of the Disciplinary Board, 600 E. Boulevard Avenue, Bismarck, North Dakota 58505–0530.

[¶ 19] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.