Filed 8/2/17 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2017 ND 199

In the Matter of the Application 

for Disciplinary Action Against 

Gene W. Allen, a Member of the 

Bar of the State of North Dakota

Disciplinary Board of the Supreme Court 

of the State of North Dakota, Petitioner

v.

Gene W. Allen, Respondent

No. 20170061

Application for disciplinary action.

SUSPENSION ORDERED.

Per Curiam.

Ryan A. Heintz (argued) and Kara J. Erickson (appeared), Bismarck, N.D., for petitioner.

Ronald H. McLean, Fargo, N.D., for respondent.

Disciplinary Board v. Allen

No. 20170061

Per Curiam.

[¶1] Attorney Gene Allen objects to a report of a hearing panel of the Disciplinary Board finding that he violated several rules of professional conduct while serving as his mother’s attorney-in-fact and as the personal representative of her estate, and recommending that he be suspended from the practice of law and pay the costs and expenses of the disciplinary proceedings.  We conclude there is clear and convincing evidence that Allen violated N.D.R. Prof. Conduct 1.7, 1.9, and 8.4.  We order that Allen be suspended from the practice of law for six months and order that he pay $15,360.77 for the costs and expenses of the proceedings.

I

[¶2] Allen was admitted to practice law in North Dakota in August 2011, but he began practicing law in Minnesota and has been licensed there since 1990.  He is currently a solo-practitioner with Allen Law Office, P.L.L.C., in Beach.  Allen was Margaret Allen’s only child.  Allen’s daughter, Ashley Baker, was Margaret Allen’s only grandchild until Allen remarried and had a second child in July 2013.

[¶3] In October 2011, Margaret Allen named Allen as her attorney-in-fact.  Margaret Allen became ill on December 31, 2011, and was hospitalized in Dickinson.  She was transferred to a Bismarck hospital soon afterward, but her condition did not improve while she was hospitalized there.  With Margaret Allen’s health continuing to decline, Allen located a will she had executed in 2007.  Under that will, she bequeathed $1,000 to a local church, $1,000 to the local ambulance service, and $2,000 to a local cemetery.  The remainder of her estate was bequeathed to Baker.  Allen was named as the alternative beneficiary who took only if Baker died before reaching the age of 23.  The will appointed Allen as the personal representative of the estate, but if he was unable or unwilling to serve, the alternative personal representative was identified as R. W. Heineman, the Montana lawyer who drafted Margaret Allen’s will.  The value of the estate, including land and mineral interests, was approximately $1 million.

[¶4] According to Allen, around January 20, 2012, Margaret Allen told him to name himself as a joint account holder with right of survivorship on her two bank accounts.  On January 24, 2012, Allen went to the First State Bank of Golva and, with the 2011 power of attorney, added himself as a joint account holder with the right of survivorship.  At the end of January 2012, Margaret was transferred for hospice care to a nursing home in Wibaux, Montana.  She died on February 1, 2012.

[¶5] In April 2012, Allen filed an application for informal probate of Margaret Allen’s will, and he was appointed personal representative of the estate.  All application documents listed Allen as either the attorney for the applicant or the attorney for the personal representative.  Over the course of the next year, Allen did little to administer the estate.  Some estate matters were handled by Allen’s use of a combination of personal and estate funds, but no clear records were kept.  No significant estate distributions were made.  Baker claimed she tried to talk to Allen about the estate, but Allen was largely unresponsive.

[¶6] In the meantime, Allen remarried and had a son in July 2013.  Before the birth, Allen decided his son should be included as a beneficiary of the estate, contrary to the terms of the will.  After the birth, Allen sent proposals to Baker, now older than 23, for liquidation of the estate and for his son to share in the inheritance.  Allen also attempted to negotiate gifts for himself in excess of $100,000 from the estate.  All proposals for alternate distributions were initiated by Allen, and two of them were submitted through his law firm while Allen continued to serve as personal representative of the estate.  Baker did not agree to any of the proposals offered by Allen.  Baker retained an attorney, and in January 2014 she requested that Allen be removed as the personal representative.  Allen stepped down, and Heineman was appointed successor personal representative.  Heineman rejected Allen’s suggestion that Allen remain the attorney for the personal representative and hired a different attorney.

[¶7] In May 2014, Allen, again acting as his own attorney, filed a petition for adjudication of intestacy against the estate.  The petition alleged that Margaret Allen’s will was not “valid,” was “fatally flawed,” and “mistakenly omitted” Allen as a beneficiary.  Allen requested the probate court to declare him “the sole heir for intestate distribution” and rule “that any share of the Decedent’s intestate estate to which [he] would have inherited by intestate succession would” pass to his son and Baker “as if [he] had disclaimed his intestate share.”  The court denied Allen’s petition, concluding that except for the minor devises to the local community, Baker was the sole beneficiary of the estate.  During the same time period, the personal representative filed a request that Allen reimburse the estate because he had “misappropriated funds for his own benefit” while acting as the personal representative.  Allen represented himself and responded, and the parties ultimately settled the matter.

[¶8] The petition for discipline against Allen alleged violations of N.D.R. Prof. Conduct 1.7 (conflict of interest); 1.9 (duties to former client); 3.3 (candor toward the tribunal); and 8.4 (misconduct) arising from his actions while serving as Margaret Allen’s attorney-in-fact and as the personal representative of her estate.  Allen denied any ethical misconduct occurred and requested dismissal of the formal charges.  Following a hearing, the panel found clear and convincing evidence that Allen violated each rule.  The hearing panel recommended that Allen be suspended from the practice of law for a period of six months and one day and that he pay $15,360.77 for the costs and expenses of the disciplinary proceedings.

II

[¶9] Allen argues there is not clear and convincing evidence that he violated any of the rules of professional conduct charged.

[¶10] In 
Disciplinary Bd. v. Ward
, 2016 ND 113, 881 N.W.2d 206, we explained:

This Court reviews disciplinary proceedings de novo on the record.  
Disciplinary Board v. Light
, 2009 ND 83, ¶ 6, 765 N.W.2d 536 (citations omitted).  Disciplinary counsel must prove each alleged violation by clear and convincing evidence, which means the trier of fact must be reasonably satisfied with the facts the evidence tends to prove and thus be led to a firm belief or conviction.  
Id.
  The evidence need not be undisputed to be clear and convincing.  
Id.
  We give due weight to the findings, conclusions, and recommendations of the Disciplinary Board, but we do not act as a mere rubber stamp for the Board.  
Id.
  To decide which sanction, if any, is appropriate, each disciplinary matter must be considered on its own facts.  
Id.

Because the hearing panel has the opportunity to hear witnesses and observe their demeanor, we accord special deference to the panel’s findings on matters of conflicting evidence.  
Disciplinary Board v. Bullis
, 2006 ND 228, ¶ 12, 723 N.W.2d 667.  Similarly, we defer to the hearing panel’s findings on the credibility of a witness, because the hearing panel has the opportunity to observe the witness’s demeanor and hear the witness testify.  
Disciplinary Board v. Johnson
, 2007 ND 203, ¶ 22, 743 N.W.2d 117.

Id.
 at ¶ 7 (quoting 
Disciplinary Bd. v. Carpenter
, 2015 ND 111, ¶ 9, 863 N.W.2d 223).

A

[¶11] Allen argues there is not clear and convincing evidence that he violated N.D.R. Prof. Conduct 1.7(a), which provides:  “A lawyer shall not represent a client if the lawyer’s ability to consider, recommend, or carry out a course of action on behalf of the client will be adversely affected by the lawyer’s responsibilities to another client or to a third person, or by the lawyer’s own interests.”

[¶12] The hearing panel reasoned that Allen acted as the attorney for himself as the personal representative of the estate, thereby binding himself to the rules of professional responsibility, and that he had a duty “to advance the cause of the estate through his actions and counsel.”  The panel found that “[w]hen Allen’s son was born in 2013, Allen’s personal interests became adverse to the interests of the estate and contrary to his fiduciary duty because Allen wanted [his son] to receive a portion of the estate,” and “[t]hese contrary interests created conflicts of interest” in violation of the rule “when Allen failed to withdraw as counsel for the personal representative.”  The panel reasoned, “Allen’s role as personal representative and attorney for the personal representative prevented him from self-dealing with regard to the estate property” under N.D.C.C. § 30.1-18-13 (U.P.C. § 3-713), and “[b]y attempting to negotiate a proposal of which he was a direct beneficiary, Allen created . . . a conflict of interest by placing himself in a situation where he was unable to place his duty to his client before his personal interest.”  The panel found that “Allen’s two adverse interests kept Allen from being able to consider, recommend, or carry out [a] course of action on behalf of his client” and that by continuing the representation despite the conflicts, Allen violated the rule.

[¶13] Allen argues there was not clear and convincing evidence that he served as the attorney for himself as the personal representative of the estate.  In 
Moen v. Thomas
, 2004 ND 132, ¶ 18, 682 N.W.2d 738, we approved a jury instruction defining an attorney-client relationship as follows:

The existence of an attorney-client relationship does not depend on an express contract or the payment of fees, and may be implied from the parties’ conduct.  An attorney-client relationship is established when a party seeks and receives advice and assistance from an attorney on matters pertinent to the legal profession.  The existence of an attorney-client relationship turns largely on the client’s subjective belief it exists and looks to the nature of the work performed and to the circumstances under which confidences are divulged.  The existence of an attorney-client relationship is a question of fact.

[¶14] Allen contends he did not have a subjective belief that he was acting as an attorney for himself in his capacity as personal representative of the estate, even though he “admits it was careless to use firm letterhead when filing” the probate and corresponding documents.  The evidence overwhelmingly establishes that Allen was acting as a lawyer for himself as the personal representative because, despite his self-serving testimony, all of the official documents, letters, and emails relating to the estate identified him as an attorney and listed his law firm address.  The panel’s finding is supported by clear and convincing evidence.

[¶15] A personal representative is a fiduciary for an estate and “is under a duty to settle and distribute the estate of the decedent in accordance with the terms of any probated and effective will and this title, and as expeditiously and efficiently as is consistent with the best interests of the estate.”  N.D.C.C. § 30.1-18-03(1) (U.P.C. § 3-703); 
see also
 
Matter of Estate of Vendsel
, 2017 ND 71, ¶¶ 11-14, 891 N.W.2d 750.  Under N.D.R. Prof. Conduct 1.8(l), a lawyer serving as a fiduciary of an estate may not serve as legal counsel for the fiduciary except when the decedent “is a spouse, child, grandchild, parent, grandparent, or sibling of the lawyer.”  Although this rule exempts attorneys with familial relationships from the absolute ban against serving in the dual capacities of fiduciary and lawyer for the fiduciary, it does not relieve them from duties owed under the law and the rules of professional conduct.

[¶16] Allen argues that he violated no legal or ethical duties because N.D.C.C. § 30.1-18-03(1) (U.P.C. § 3-703) only obligated him to advocate the testator’s last “effective” will, and he did not believe the will was effective.  This argument ignores Allen’s attempted negotiations with Baker, the primary beneficiary, while serving as the lawyer for the personal representative to change the terms of the will for the benefit of himself and his son.  Allen’s unsuccessful legal challenge claiming that the will was “invalid” was made after he had been removed as personal representative of the estate.

[¶17] We conclude there is clear and convincing evidence that Allen violated N.D.R. Prof. Conduct 1.7(a).

B

[¶18] Allen argues there is not clear and convincing evidence that he violated N.D.R. Prof. Conduct 1.9(a), which provides: “A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person’s interests are materially adverse to the interests of the former client unless the former client consents in writing.”

[¶19] The hearing panel found Allen violated the rule because “[a]fter stepping down as the personal representative and no longer being retained as counsel for the personal representative, Allen appeared as counsel for and filed a petition in support of himself as an interested party in the probate [case] without the consent of the successor personal representative.”  Allen contends the panel erred because the attorney-client relationship with himself in his capacity as personal representative did not extend to the successor personal representative, who hired his own attorney.  It is beyond serious argument that Allen’s filing of the petition for adjudication of intestacy on his own behalf was materially adverse to the application for informal probate of the will he had previously filed as the attorney for the personal representative.  The provisions of the rule “are for the protection of former clients and can be waived if the client gives written consent.”  N.D.R. Prof. Conduct 1.9 cmt. 9.  
See also
 
Disciplinary Bd. v. McIntee
, 2013 ND 111, ¶ 12, 833 N.W.2d 431.  Depending on the circumstances, a lawyer who withdraws from representing an estate’s personal representative may have multiple conflicts of interest.  He may have interests adverse to the interests of the successor personal representative.  He may have interests adverse to the individual who acted as personal representative.  He may, and where the personal representative is a close relative of the decedent and a beneficiary of the estate, as is often the case, have interests adverse to both.  
See
 
McIntee
, at ¶ 15 (stating that distinguishing conflicts between former client as individual and former client as personal representative “paints too fine a line”).  Allen’s client was the personal representative of the estate.  After his withdrawal, his former client was the successor personal representative, not himself as the former personal representative.  Before representing himself in his individual capacity in a matter related to the estate, he had to obtain written consent from his former client, the successor personal representative.  He did not do so.

[¶20] We conclude there is clear and convincing evidence that Allen violated N.D.R. Prof. Conduct 1.9(a).

C

[¶21] Allen argues there is not clear and convincing evidence that he violated N.D.R. Prof. Conduct 3.3(a)(1), which provides:  “A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.”

[¶22] The hearing panel found that when Allen filed the application for informal probate in April 2012, he made statements of material fact indicating the will was validly executed, he was unaware of any documents revoking the will, and the instrument submitted was Margaret Allen’s last will.  The panel found that sometime before his son’s birth in July 2013, Allen decided the son “should be included within the distribution of the estate, even though [the son] could not take under the terms of Margaret’s will.”  The panel found, “Allen’s conclusion that [the son] became a potential heir was not shared with the court and Allen made no corrective filings to the informal probate documents, nor were any other actions taken by Allen to advance his position at that time.”  When Allen attempted to negotiate with Baker after the son’s birth, “[n]o terms of Allen’s proposals were contemplated by the will.”  The panel found that Allen resigned as personal representative in January 2014 and filed the petition for formal adjudication of intestacy in May 2014, claiming “for the first time . . . that Margaret’s will was invalid, that [the son] took under the will, and that Allen himself was entitled to property as an intestate heir.”  The panel found this position was “factually inconsistent” with the April 2012 informal probate documents.  The panel concluded the rule was violated because “Allen failed to correct a statement made to the court when he did not inform the court that the previously provided information, which had been the basis for the informal probate, was now believed to be incorrect after further consideration of Margaret Allen’s will.”

[¶23] The evidence on this issue is confusing at best.  Allen’s affidavit and testimony suggested that Baker initially proposed sharing her inheritance with Allen and his son after realizing they would take nothing under the will.  Although Baker denied this, the correspondence between Allen and Baker regarding the various proposals to divide the estate does not indicate a belief on Allen’s part that the will was somehow invalid or ineffective.  In an email to Baker’s attorney in January 2014, Allen stated, “I have told [Baker] that under Mom’s Will I have no rights to any of Mom’s property.  I don’t like it, but that’s the way it is.”  In a January 31, 2014, letter to Baker’s attorney written after Allen had resigned as personal representative, Allen stated:  “When you and I last spoke on Wednesday you asked if I could provide my thoughts and some authority regarding claims of after-born heirs.”  Yet, Allen declared in a reply brief in his proceeding for an adjudication of intestacy that he determined before the birth that his son and daughter should be treated equally under the probate code.

[¶24] There is some evidence to support the hearing panel’s finding on this issue, but it is not clear and convincing evidence.  We conclude there is not clear and convincing evidence that Allen violated N.D.R. Prof. Conduct 3.3(a)(1) while he served as personal representative of the estate.

D

[¶25] Allen argues there is not clear and convincing evidence that he violated N.D.R. Prof. Conduct 8.4(c), which provides: “It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation that reflects adversely on the lawyer’s fitness as a lawyer.”

[¶26] The hearing panel found:

After learning of the will’s provisions, Allen changed two of Margaret’s bank accounts, a checking and savings account, into joint tenancy accounts with the right of survivorship.  Allen relied on the previously executed power of attorney and an alleged conversation with Margaret in order to facilitate an ownership change on the accounts so that he became a joint owner with rights of survivorship with Margaret.

Allen asserted that he had had a conversation with Margaret at the hospital a few days before he changed the accounts and that she wanted him to have the money within those bank accounts.  He asserted  that she had told him to add his name to the accounts, but there were no witnesses to that conversation and it was not memorialized in writing.  The bank did not verify with Margaret that it was her intention to change the accounts into joint accounts with Allen.  The Hearing Panel specifically finds Allen’s testimony, as to the occurrence of the conversation with his mother to change the bank accounts, to not be credible.

[¶27] The hearing panel concluded:

With respect to the alleged violation of Rule 8.4, N.D.R. Prof. Conduct, Allen engaged in misconduct when he communicated in a dishonest manner with bank personnel with regard to Margaret Allen’s alleged directive that he change Margaret’s checking and savings account to add himself as a joint tenant with the right of survivorship.

Allen engaged in self-dealing with trust property and failed to rebut the presumption of undue influence inherent in such transactions as delineated by statute and precedent.

Dishonest conduct such as that reflects adversely on Allen’s fitness as a lawyer.  The Hearing Panel finds that clear and convincing evidence was present to establish that Allen violated Rule 8.4, N.D.R. Prof. Conduct.

[¶28] Allen argues that a presumption of undue influence does not exist in disciplinary proceedings and that a civil action is the appropriate venue for challenging the actions of an attorney-in-fact.  When Allen received the power of attorney from his mother, North Dakota law created a confidential relationship and imposed fiduciary duties upon him.  
See, e.g.
, 
Estate of Vizenor ex rel. Vizenor v. Brown
, 2014 ND 143, ¶ 26, 851 N.W.2d 119.  All transactions between Allen and his mother, including gifts, are presumed to be without sufficient consideration and under undue influence until a factfinder finds from credible evidence that the presumed fact does not exist.  
Id.
  Allen has not persuaded us that the law applicable to attorneys-in-fact in general should not apply to an attorney in a disciplinary proceeding.

[¶29] Allen argues that, even if the rebuttable presumption applies, the hearing panel erred in concluding he did not rebut the presumption and that disciplinary counsel failed to present any evidence he was acting without authority from Margaret Allen.  Allen relies on his testimony that Margaret Allen instructed him to add himself as a joint account holder on her bank accounts and on the testimony of others that they were “not surprised” she decided to leave her bank accounts with him.

[¶30] First, the panel specifically found Allen’s testimony about Margaret Allen’s instructions to him was not credible, and we defer to a hearing panel’s findings on the credibility of a witness.  
See
 
Ward
, 2016 ND 113, ¶ 7, 881 N.W.2d 206.  Second, the circumstantial evidence considered by the panel confirms rather than rebuts the presumption, establishing clear and convincing evidence of a violation of the rules of professional conduct.  
See
 
Disciplinary Bd. v. McDonald
, 2000 ND 87, ¶¶ 27-30, 609 N.W.2d 418.  Allen was aware that he would receive nothing under his mother’s will when he used the power of attorney to make himself a joint owner of Margaret Allen’s bank accounts, which would not be part of the probate estate if he did not predecease her.  The close proximity between Allen’s actions taken at the bank and his mother’s death casts doubt about his claim that she instructed him to change the accounts while terminally ill.  After his appointment as personal representative, Allen attempted to negotiate with the primary beneficiary to obtain portions of the estate for himself and his son.  Allen’s correspondence with Baker and her attorney demonstrates his frustration with Baker being the sole primary beneficiary of his mother’s estate.  Allen’s conduct reflects adversely on his fitness as a lawyer.

[¶31] We conclude there is clear and convincing evidence that Allen violated N.D.R. Prof. Conduct 8.4(c).

III

[¶32] Allen argues that a reprimand is the more appropriate sanction in this case because any violations of the rules were “at most due to negligence.”  We agree with the hearing panel’s finding that “Allen’s conduct, in all instances of misconduct, was done knowingly.”

[¶33] The hearing panel found as aggravating factors for sanctions under N.D. Stds. Imposing Lawyer Sanctions 9.22(b), (d) and (i) that Allen (1) exhibited a dishonest and selfish motive by advancing his interests ahead of the interests of the estate and the other beneficiaries and unjustly enriched himself through the power of attorney; (2) committed multiple offenses; and (3) has substantial experience in the practice of law.  As mitigating factors under N.D. Stds. Imposing Lawyer Sanctions 9.32(a) and (e), the panel noted Allen has no previous disciplinary history and was cooperative with the disciplinary proceedings.

[¶34] For Allen’s violation of N.D.R. Prof. Conduct 1.7(a) and 1.9(a), the Standards for Imposing Lawyer Sanctions generally recommend disbarment.  
See
 N.D. Stds. Imposing Lawyer Sanctions 4.31(a) and (c).  Suspension is generally appropriate for Allen’s violation of N.D.R. Prof. Conduct 8.4(c) under the circumstances here.  
See
 N.D. Stds. Imposing Lawyer Sanctions 5.12.

[¶35] The hearing panel recommended that “a more severe sanction of disbarment is warranted” in this case, but determined “Allen’s lack of a disciplinary record merits a downward departure.”  The panel further recommended that “Allen’s conduct is egregious and he should be made to demonstrate to the Court that he has taken steps to ensure that such conduct will not occur in the future.”  In addition to Allen’s lack of a disciplinary record, we are persuaded to depart downward because the circumstances that led to discipline here are unlikely to reoccur.  Considering all of the appropriate factors, and our conclusion that there was insufficient evidence to support a finding that Allen violated N.D.R. Prof. Conduct 3.3(a)(1), we conclude that suspension is the appropriate sanction, but we believe that a six-month suspension and payment of the costs and expenses of the disciplinary proceedings are appropriate under these circumstances.

IV

[¶36] We order that Allen be suspended from the practice of law for six months, effective September 1, 2017.  We further order that Allen pay $15,360.77 for the costs and expenses of the disciplinary proceedings, payable to the Secretary of the Disciplinary Board within 60 days.  We further order that Allen must comply with N.D.R. Lawyer Discipl. 6.3 regarding notice, and any reinstatement is governed by N.D.R. Lawyer Discipl. 4.5.

[¶37] Gerald W. VandeWalle, C.J.

Jerod E. Tufte

Lisa Fair McEvers

Carol Ronning Kapsner, S.J.

Crothers, Justice, concurring specially.

[¶38] Our decision today makes clear that lawyers acting in a non-lawyer representational capacity are exposed to disciplinary sanction for professional misconduct AND potentially limit their future ability to assert personal claims.  I agree with the Court’s order.  I write separately to highlight what I believe is the impact of our ruling on the ability of a family member-lawyer to later assert any claim against a decedent’s estate.  Specifically, if a lawyer agrees to serve in a familial fiduciary capacity such as a personal representative, the lawyer likely is barred from using information obtained in that capacity (and by the inherent simultaneous representation by the lawyer under Rule 1.7) in any subsequent proceeding involving the estate.

[¶39] We hold that a lawyer serving as a personal representative always is a lawyer, subject to the general conflicts of interest rule.  
Majority
, at ¶ 15.  With that holding, any time the lawyer ceases being either the personal representative or the lawyer for the personal representative, the lawyer will be bound by Rule 1.9 regarding former clients.  
Majority
, at ¶ 19.

[¶40] Rules 1.7 and 1.8 limit what a lawyer can do with information gained during a representation.  Rule 1.7 provides:

“Except as required or permitted by Rule 1.6, a lawyer shall not use information relating to representation of a client to the disadvantage of a client unless a client who would be disadvantaged consents after consultation.”

N.D.R. Prof. Conduct 1.7(d).  None of the Rule 1.6 (confidentiality of information) exceptions apply here.  Rule 1.8 addresses conflicts of interest and identifies prohibited transactions with clients.  Rule 1.8 provides:

“Except as permitted or required in Rules 1.6 and 3.3, a lawyer shall not use information relating to representation of a client to the disadvantage of the client unless after consultation, including written advice to seek independent counsel, the client consents.”

N.D.R. Prof. Conduct 1.8(b).  Again, the exceptions in Rules 1.6 and 3.3 are not applicable here.

[¶41] Reading Rules 1.7, 1.8 and 1.9 together leads to the conclusion that lawyers acting as family member-personal representatives are barred in the future from asserting any claims that may adversely affect the former client.  This limitation applies whether the lawyer personally asserts a claim or later represents another party against a successor personal representative.  The Rules presumably bar such claims whether a lawyer self-represents or hires counsel.  The exception is when a personal representative (meaning the successor personal representative) expressly consents according to the particular requirements in Rules 1.7(d) and 1.8(b).  
See
 
Majority
, at ¶ 19.

[¶42] I write separately to highlight these constraints placed on lawyers and to point out that today’s case will broadly impact a lawyer’s ability to assert future claims.  In light of our ruling, lawyers should advisedly and cautiously accept representational positions in family-related matters where they might have a personal interest that is or might be adverse to the estate.

[¶43] Daniel J. Crothers